# NO. 12-22-00187-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF* | § | *APPEAL FROM THE 294TH* |
| *S.A. & P.A.,* | § | *JUDICIAL DISTRICT COURT* |
| *CHILDREN* | § | *VAN ZANDT COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Appellants A.A. and J.A. appeal the termination of their parental rights to their minor children, S.A. and P.A. In two issues, Appellants (1) argue that the trial court's jurisdiction expired before an extension was granted or a trial commenced, rendering the trial court's subsequent order of termination void, and (2) challenge the legal and factual sufficiency of the evidence supporting the trial court's finding that they failed to complete parenting classes as required by their service plan.[1] We affirm the trial court's judgment.

## BACKGROUND

A.A. is the children's mother, and J.A. is the children's father. On December 14, 2020, the Department of Family and Protective Services (the Department) filed an original petition for protection of S.A. and P.A., for conservatorship, and for termination of Appellants' parental rights. On January 20, 2021, the trial court signed a "scheduling/discovery order," in which it noted that the Department was named temporary managing conservator on January 19, 2021, and concluded that the one-year dismissal date is January 24, 2022.[2] In a written "Temporary Order Following

---

[1] Neither parent challenges the sufficiency of the evidence regarding the finding that termination is in the best interest of the children.

[2] In an initial permanency hearing order, dated July 27, 2021, the trial court erroneously stated that the automatic dismissal date is January 17, 2022. In a later permanency hearing order, which was signed on November 5, 2021, the trial court correctly identified the automatic dismissal date as January 24, 2022.

Show Cause Hearing," dated February 24, 2021, the trial court appointed the Department temporary managing conservator of the children and stated that the court conducted a show cause hearing via Zoom on January 19, 2021. Other documents in the appellate record also identify January 19, 2021, as the date on which the trial court appointed the Department temporary managing conservator.

In a "Permanency Hearing Order Before Final Order," signed on January 7, 2022, the trial court noted that it held a permanency hearing on December 20, 2021, and the trial court again stated that the dismissal date is January 24, 2022. The trial court also stated in its order that neither A.A. nor J.A. had "demonstrated adequate and appropriate compliance with the service plan." In another Permanency Hearing Order Before Final Order, signed on January 26, 2022, the trial court again found that neither parent had demonstrated adequate and appropriate compliance with the service plan and found that extraordinary circumstances necessitate the Department remaining temporary managing conservator of the children, retained the case on the court's docket, and set July 23, 2022, as the automatic dismissal date. The trial court's docket sheet entry dated January 13, 2022, states that neither parent is in compliance, "[t]oday is [the] permanency hearing[,]" "placement status quo[,]" and notes that the trial court granted an extension.[3] On April 8, 2022, the Department filed a permanency report, in which it indicated that A.A. is not in compliance with each requirement set out by the Department but J.A. "is doing as asked by the Department." In a permanency hearing order filed on May 2, 2022, the trial court stated that A.A. "has not demonstrated adequate and appropriate compliance with the service plan[,]" but J.A. was in compliance.

After a trial on the merits, the trial court found that the Department established, by clear and convincing evidence, that (1) both A.A. and J.A. engaged in the acts or omissions necessary to support termination of their parental rights under Section 161.001(b)(1)(O) of the Texas Family Code and (2) termination of Appellants' parental rights is in the children's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(O), (2) (West 2022). Based upon these findings, the trial court signed an order terminating the parental rights of both A.A. and J.A. on July 6, 2022. This appeal followed.

---

[3] The January 13 docket sheet entry states, in pertinent part, "Extension granted."

## TERMINATION OF PARENTAL RIGHTS

Involuntary termination of parental rights involves fundamental constitutional rights. *Vela v. Marywood*, 17 S.W.3d 750, 759 (Tex. App.—Austin 2000), *pet. denied per curiam*, 53 S.W.3d 684 (Tex. 2001); *In re J.J.*, 911 S.W.2d 437, 439 (Tex. App.—Texarkana 1995, writ denied). Because a termination action permanently sunders the bonds between parent and child, the proceedings must be strictly scrutinized. *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976); *In re Shaw*, 966 S.W.2d 174, 179 (Tex. App.—El Paso 1998, no pet.). "[W]e must exercise the utmost care in reviewing the termination of parental rights to be certain that the child's interests are best served and that the parent's rights are acknowledged and protected." *Vela*, 17 S.W.3d at 759.

Section 161.001(b) of the Texas Family Code permits a court to order termination of parental rights if two elements are established. TEX. FAM. CODE ANN. § 161.001(b) (West 2022). The movant must show that (1) the parent committed one or more predicate acts or omissions, and (2) termination is in the child's best interest. *See id.* § 161.001(b)(1), (2); *see also In re J.M.T.*, 39 S.W.3d 234, 237 (Tex. App.—Waco 1999, no pet.). Both elements must be established by clear and convincing evidence, and proof of one element does not alleviate the petitioner's burden of proving the other. TEX. FAM. CODE ANN. § 161.001; *Wiley*, 543 S.W.2d at 351; *In re J.M.T.*, 39 S.W.3d at 237.

The "clear and convincing" evidentiary standard for termination of parental rights is both constitutionally and statutorily mandated. TEX. FAM. CODE ANN. § 161.001; *In re J.J.*, 911 S.W.2d at 439. "Clear and convincing evidence" is defined as "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2019). The party seeking termination of parental rights bears the burden of proof. *In re J.M.T.*, 39 S.W.3d at 240.

## JURISDICTION

In their first issue, A.A. and J.A. assert that the trial court's jurisdiction expired before an extension was granted or a trial commenced, rendering the trial court's subsequent order of termination void.

**Standard of Review and Applicable Law**

Whether a trial court possesses subject matter jurisdiction is a question of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *In re X.A.F.*, No. 07-19-00443-CV, 2020 WL 2896533, at *1 (Tex. App.—Amarillo June 1, 2020, no pet.) (mem. op.); *In re T.B.*, 497 S.W.3d 640, 644 (Tex. App.—Fort Worth 2016, pet. denied). Section 263.401(a) of the Texas Family Code, states as follows:

> Unless the court has commenced the trial on the merits or granted an extension under Subsection (b) or (b-1), on the first Monday after the first anniversary of the date the court rendered a temporary order appointing the department as temporary managing conservator, the court's jurisdiction over the suit affecting the parent-child relationship filed by the department that requests termination of the parent-child relationship or requests that the department be named conservator of the child is terminated and the suit is automatically dismissed without a court order. Not later than the 60th day before the day the suit is automatically dismissed, the court shall notify all parties to the suit of the automatic dismissal date.

TEX. FAM. CODE ANN. § 263.401(a) (West Supp. 2022). In other words, a trial court automatically loses jurisdiction over a termination of parental rights case if the court does not commence a trial on the merits or grant an extension by the dismissal deadline. *In re Z.S.*, 631 S.W.3d 313, 316 (Tex. App.—Houston [14th Dist.] 2020, no pet.). If the trial court fails to commence trial on time, the court's jurisdiction over the suit is terminated, and the suit is automatically dismissed without a court order. TEX. FAM. CODE ANN. § 263.401(a). Additionally, Subsection 263.401(b) provides that the trial court may not retain the suit on its docket after the time described in Subsection 263.401(a) unless the court finds that (1) extraordinary circumstances necessitate the child remaining in the temporary conservatorship of the Department and (2) continuing the Department's appointment as temporary managing conservator is in the children's best interest. *Id*. § 263.401(b). If the trial court makes the required findings, it may retain the suit on its docket for not more than 180 days after the time set forth in Subsection 263.401(a). *Id*.

**Analysis**

Generally, docket sheet entries are insufficient to constitute a decree of the court; however, Section 101.026 of the Texas Family Code modifies this rule in suits affecting the parent-child relationship, including termination of parental rights cases, and expressly allows a trial court to pronounce or render an order on its docket sheet. *Id*. § 101.026 (West 2019); *In re G.X.H.*, 627 S.W.3d 288, 297-98 (Tex. 2021). In this case, it is undisputed that the one-year dismissal date was

January 24, 2022. It is also undisputed that the trial court's docket sheet states that on January 13, 2022, the trial court granted an extension. We conclude that the January 13 notation on the trial court's docket sheet, which stated that it granted an extension, is sufficient to avoid automatic dismissal, and the trial court retained jurisdiction over the case. *See* TEX. FAM. CODE ANN. §§ 101.026, 263.401(a), (b); ***In re G.X.H.***, 627 S.W.3d at 297-98; ***In re J.-R.A.M.***, No. 10-20-00221-CV, 2020 WL 7866877, at *3 (Tex. App.—Waco Dec. 30, 2020, pet. denied) (mem. op.) (holding that the oral rendition of an extension is sufficient to comply with the Texas Family Code). Accordingly, we overrule issue one.

<u>FAILURE TO COMPLY WITH PROVISIONS OF COURT ORDER</u>

In their second issue, A.A. and J.A. challenge the legal and factual sufficiency of the evidence to terminate their parental rights. The sole predicate ground found by the trial court as to both A.A. and J.A. was failure to comply with the provisions of a court order that specifically established the actions necessary to obtain the return of the children. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(O). A.A. argues that she had not been served, so it was "objectively factually impossible for her to comply" because the trial court did not acquire jurisdiction over her until she made a general appearance on the day of trial. J.A. contends that (1) the children were not removed for abuse or neglect and (2) the service plan does not identify with sufficient specificity the parenting series that he is required to complete, and therefore the record does not demonstrate that he knew what the order required of him.

**Pertinent Pleadings and Evidence**

In its original petition for protection of the children, for conservatorship, and for termination, the Department alleged that "[t]here is a continuing danger to the physical health or safety of the children caused by an act or failure to act of the person entitled to possession of the children[,] and that allowing the children to remain in the home would be contrary to the children's welfare[.]" The removal affidavit attached to the Department's petition alleged that the Department received a report of neglectful supervision on October 8, 2020, stating that A.A. had given birth, was "displaying concerning behaviors, including screaming after birth and answering questions inappropriately[,]" and tested positive for marijuana at a prenatal appointment. According to the affidavit, A.A. was only taking prescribed medication for her mental health "when she wanted to." The affidavit further asserted that the Department received an additional

intake on October 13, 2020, which stated that A.A. was committed to a psychiatric facility and subsequently discharged after a hearing, but A.A. "was actively psychotic, paranoid, and refusing treatment and medication, as well as refusing food or drinks." Additionally, the affidavit asserted that J.A. tested positive for marijuana, and that the parents were ordered to participate in family-based safety services "to address father's substance use and mother's mental health."

In its temporary order following the show cause hearing, the trial court stated that it examined and reviewed the Department's pleadings and the sworn affidavit of removal. Based upon the facts contained therein and the evidence presented at the hearing, the trial court stated that it found sufficient evidence to show (1) a continuing danger to the physical health or safety of the children caused by an act or failure to act of the person entitled to possession, (2) continuation of the children in the home would be contrary to the children's welfare, and (3) reasonable efforts were made to prevent or eliminate the need to remove the children. The trial court appointed the Department temporary managing conservator of the children and appointed A.A. and J.A. as possessory conservators with limited rights, duties, possession, and access to the children.

At trial, Tara Skinner, a family-based safety service worker for the Department, testified that at the time of the December 2020 compliance hearing, neither parent was in compliance with the trial court's orders because A.A. had not participated in the required services, J.A. had not completed his substance abuse assessment, and J.A. was continuing to test positive for marijuana, so a removal affidavit was ordered. According to Skinner, because the Department was concerned that A.A. was "not addressing her mental health[,]" and about whether J.A. could keep the children safe from A.A., as well as J.A. continuing to test positive for marijuana, the children were placed with their paternal grandparents, and J.A. was ordered to remain in the home with the paternal grandparents. A.A. was not allowed to visit the children except at the Department's office. Skinner explained that both parents had prior cases with the Department involving similar issues. Skinner testified that the Department sought removal due to concerns about A.A.'s mental health and her lack of cooperation to address her mental health, as well as the usage of marijuana by J.A. and the paternal grandparents. According to Skinner, J.A. was not compliant with services before the children were removed, and the Department believed J.A.'s supervision of the children was neglectful.

Marion Barrera, who previously worked in the Department's conservatorship unit, testified that she worked on the case for approximately six months. Barrera testified that she discussed the

service plan with J.A., and J.A. signed the plan, which the trial court designated as an order of the court at the status hearing. Barrera explained that J.A. contacted a parenting organization and although he was scheduled to begin classes, he did not begin parenting classes while she was the caseworker. According to Barrera, A.A. did not begin any of the ordered services during Barrera's time as caseworker, and she did not regularly visit the children.

Amanda Skafec, a conservatorship caseworker for the Department, testified that she was assigned the case in July 2021, and J.A. had completed his psychological evaluation, ETCADA assessment, and individual counseling, and he was taking the required drug tests. Skafec testified that J.A. had not completed his parenting classes as of the date of trial. According to Skafec, A.A. has not visited the children. Skafec testified that being placed in their parents' home would be dangerous for the children because of A.A.'s mental health "and the fact that mom and dad are still not divorced."

J.A. testified that he wants his children to return home. J.A. explained that he has one parenting class left to complete and testified, "I've got everything done but the very last lesson, I believe."

## Standard of Review and Applicable Law

When presented with a challenge to both the legal and factual sufficiency of the evidence, an appellate court must first review the legal sufficiency of the evidence. *Glover v. Tex. Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex. 1981); *In re M.D.S.*, 1 S.W.3d 190, 197 (Tex. App.—Amarillo 1999, no pet.). When reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the finding to determine whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could, and we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id*. If no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, the evidence is legally insufficient. *Id*. The trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Nordstrom v. Nordstrom*, 965 S.W.2d 575, 580 (Tex. App.—Houston [1st Dist.] 1997, pet. denied).

When reviewing the factual sufficiency of the evidence, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth

of the Department's allegations. *In re J.F.C.*, 96 S.W.3d at 266. We give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing, and we consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its ruling. *Id.* If, considering the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, the evidence is factually insufficient. *Id.*

**Analysis Regarding A.A.**

A.A. contends that the trial court did not acquire jurisdiction over her until the date of the final hearing, when she "made a general appearance through her attendance at the trial." A.A. asserts that the evidence supporting termination under Section 161.001(b)(1)(O) is legally and factually insufficient because it was "objectively factually impossible for her to comply" with the requirements of the family service plan the trial court ordered when it allegedly lacked jurisdiction over her. A.A. does not actually discuss of challenge the sufficiency of the evidence that she failed to comply with the requirements of the service plan. Rather, the crux of her argument is that the trial court lacked personal jurisdiction over her.

The record does not indicate that A.A. was served with citation or signed a written waiver of service. An officer who attempted to personally serve A.A. noted on his return that service was not executed, and that "[b]ased on previous attempts, [A.A.] will actively avoid process service." Upon making a second attempt at serving A.A., the same officer noted that A.A. was avoiding delivery. The record reflects that the trial court appointed an attorney to represent A.A. on December 17, 2020, A.A.'s counsel submitted bills to the trial court during the pendency of the case for, among other things, meeting with A.A. The trial court's temporary order following the show cause hearing reflects that A.A. and her appointed attorney appeared and announced ready at the show cause hearing on January 19, 2021. At the Department's request, the trial court also signed an order appointing a guardian ad litem for A.A.

The record shows that A.A. participated in Family Group Decision Making with J.A., a court appointed special services advocate, Department caseworkers, and her court-appointed guardian ad litem. The family service plan was filed with the court on March 2, 2021, and was declared an order of the court in the trial court's order of March 11, 2021. A.A. appeared telephonically and through her counsel of record at the status hearing that occurred on March 11,

8

2021, and the trial court's docket sheet from that date states that A.A. wants her children returned to her and wants an attorney. A.A. also appeared at a hearing on March 18, 2021, and the trial court's docket sheet from that date states that A.A. "is asking for placement with her and her husband[,]" "wants the Judge to dismiss this case today[,]" and "[d]oes not want her children in foster care." The docket sheet further states that the trial court denied A.A.'s requests to dismiss the case and to return the children to her and J.A. The trial court's initial permanency hearing order, signed on July 27, 2021, states that A.A. appeared through her attorney of record and announced ready. A.A. also appeared at a permanency hearing in person and through her counsel of record on October 22, 2021, and she again asked the court to dismiss the case. Moreover, A.A. appeared through her attorney at permanency hearings in December 2021, January 2022, and April 2022 and announced ready.

"A party enters a general appearance when it (1) invokes the judgment of the court on any question other than the court's jurisdiction, (2) recognizes by its acts that an action is properly pending, or (3) seeks affirmative action from the court." *In re D.M.B.*, 467 S.W.3d 100, 103 (Tex. App.—San Antonio 2015, pet. denied) (quoting *Exito Electronics Co. v. Trejo*, 142 S.W.3d 302, 304-05 (Tex. 2004). "An attorney's appearance on behalf of a defendant in a termination proceeding constitutes the defendant-parent's general appearance[.]" *In re N.F.*, No. 09-19-00435-CV, 2020 WL 2070286, at *16 (Tex. App.—Beaumont Apr. 30, 2020, pet. denied) (mem. op.). A party waives complaints regarding service of process if she makes a general appearance. TEX. R. CIV. P. 120 (providing that entering a general appearance has the same force and effect as if citation had been issued and served as provided by law); *In re D.M.B.*, 467 S.W.3d at 103; *In re A.E.G.*, No. 12-11-00307-CV, 2012 WL 4502085, at *3 (Tex. App.—Tyler Sept. 28, 2012, no pet.) (mem. op.).

As discussed above, the record reflects that A.A. and her court-appointed attorney appeared and announced ready at the show cause hearing on January 19, 2021. A.A. also appeared telephonically and through her counsel of record at the status hearing that occurred on March 11, 2021, after which the trial court made the family service plan an order of the court, and the trial court's docket sheet from that date states that A.A. wanted her children returned to her. We conclude that A.A., both personally and through her court-appointed attorney, entered a general appearance and requested affirmative relief from the court by seeking dismissal of the case and the return of the children. *See* TEX. R. CIV. P. 120; *In re N.F.*, 2020 WL 2070286, at *16; *In re*

9

***D.M.B.***, 467 S.W.3d at 103; ***In re A.E.G.***, 2012 WL 4502085, at \*3.  The trial court had jurisdiction over A.A., and she was therefore required to comply with the terms of the court-ordered service plan.  For all these reasons, we overrule issue two with respect to A.A.

**Analysis Regarding J.A.**

As discussed above, J.A. challenges the legal and factual sufficiency of the evidence supporting termination under Section 161.001(b)(1)(O) of the Texas Family Code.  Specifically, J.A. argues that (1) the evidence was insufficient to demonstrate that the children were removed for abuse or neglect and (2) the service plan does not identify with sufficient specificity the parenting series that he must complete.

The trial court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that the parent failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the children.  Tex. Fam. Code Ann. § 161.001(b)(1)(O).  Subsection (O) does not quantify any particular number of provisions of the family service plan that a parent must fail to achieve for parental rights to be terminated or the degree of a parent's conduct that will be deemed to be a failure to achieve a particular requirement of the service plan.  *See id*.; ***In re B.H.R.***, 535 S.W.3d 114, 122 (Tex. App.—Texarkana 2017, no pet.).  Neither the statute nor the order that the trial court entered prescribes the degree to which the parent must comply with the court order, and neither the order nor the statute "make[s] provision for excuses" for a parent's failure to comply with such an order.  *See* Tex. Fam. Code Ann. § 161.001(b)(1)(O); ***In re J.S.***, 291 S.W.3d 60, 67 (Tex. App.—Eastland 2009, no pet.) (quoting ***In re T.N.F.***, 205 S.W.3d 625, 631 (Tex. App.—Waco 2006, pet. denied), *overruled on other grounds by* ***In re A.M.***, 385 S.W.3d 74, 79 (Tex. App.—Waco 2012, no pet.)).

*Due process and specificity*

J.A. asserts that the trial court's status hearing order of April 1, 2021, which incorporated the family service plan by reference, as well as the plan itself, are insufficiently specific regarding the series of parenting classes J.A. must complete, thereby violating his right to due process.

Appellate issues should direct our attention to error in the trial court.  ***In re S.K.S.***, No. 06-11-00014-CV, 2011 WL 2462030, at \*2 (Tex. App.—Texarkana June 21, 2011, no pet.) (mem. op.) (citing Tex. R. App. P. 33.1).  "Due process and other alleged constitutional violations also must be raised in the trial court for them to be preserved for appellate review."  ***Id***.  Because the

due process issue was not raised in the trial court, we conclude that it was not preserved for our review. *See **id**.*

Even if the issue were preserved, J.A. would not prevail. Section 263.102 of the Texas Family Code sets forth the requirements for a valid service plan. TEX. FAM. CODE ANN. § 263.102 (West 2019). Section 263.102 requires that the service plan must (1) be specific, (2) "in writing in a language that the parents understand, or made otherwise available[,]" (3) be prepared by the Department in conference with the parents, (4) state appropriate deadlines, (5) "specify the primary permanency goal and at least one alternative permanency goal[,]" (6) state the steps that are necessary to either return the children to their home, enable the children to remain in their home, or otherwise provide a safe and permanent placement, (7) state the actions and responsibilities the parents must take to achieve the goals of the service plan and the assistance the Department will provide the parents toward meeting the goal, (8) state any specific skills or knowledge the parents must acquire or learn, as well as any required behavioral changes, (9) state the actions the parents must take to ensure that the children attend school or improve academic compliance, (10) state the name of the person with the Department that the parents may contact for information, "if other than the person preparing the plan[,]" and (11) "prescribe any other term or condition that the [D]epartment determines to be necessary to the service plan's success." *Id*. § 263.102(a). The Department "must write the service plan in a manner that is clear and understandable to the parent in order to facilitate the parent's ability to follow the requirements of the service plan." *Id*. § 263.102(d)

The status hearing order provides, in pertinent part, that "except as specifically modified by this order or any subsequent order, the plan of service for the parents, filed with the Court on March 2, 2021, and incorporated herein by reference as if the same were copied verbatim in this order, is APPROVED and made an ORDER of this Court." In a section entitled "Required Action," the family service plan states that J.A. "shall participate in a parenting series . . . [and] provide the Department, through his caseworker, with a certificate of completion." The service plan further stated that J.A. shall demonstrate through his interactions with the children that he can apply the skills acquired in the classes. The family service plan stated that the agency that provided the required parenting series is Canton Child Advocacy Center, and the address and telephone number of said agency were listed.

11

J.A. cites no authority for his contentions that due process requires that the plan contain details of the parenting series, such as a referral and the required modules, and we are aware of none. We conclude that the trial court's order and the service plan were sufficiently specific. *See* TEX. FAM. CODE ANN. § 263.102(a), (d); *see generally **In re N.G.***, 577 S.W.3d 230, 238 (Tex. 2019) (holding that the trial court's order describing the actions necessary to obtain return of the children must be "sufficiently specific to warrant termination of parental rights for failure to comply with it.").

### *Sufficiency of the Evidence*

J.A. contends that the evidence was legally and factually insufficient to show that (1) the children were removed from him for abuse or neglect and (2) that he failed to comply with the requirements of the service plan. J.A. points to the caseworker's testimony that the danger to the children was A.A.'s mental health and the fact that J.A. and A.A. are not divorced. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(O). However, Subsection (O) does not require that the parent who failed to comply with a court order be the same parent whose abuse or neglect warranted the children's removal. ***In re D.R.J.***, 395 S.W.3d 316, 320 (Tex. App.—Fort Worth 2013, no pet.); ***In re S.N.***, 287 S.W.3d 183, 188 (Tex. App.—Houston [14th Dist.] 2009, no pet.) ("Had the legislature intended such a requirement, it could have easily provided that conservatorship be 'as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child *by the parent*.").

The trial court heard evidence that A.A.'s mental health endangered the children. *See **In re B.H.R.***, 535 S.W.3d at 122; ***In re D.R.J.***, 395 S.W.3d at 320; ***In re J.S.***, 291 S.W.3d at 67; ***In re S.N.***, 287 S.W.3d at 188. The trial court also heard Barrera testify that she discussed the service plan with J.A., and that J.A. signed the plan. In addition, the trial court heard Skafec testify that J.A. had not completed the required parenting classes at the time of trial, as well as J.A.'s testimony that he had not yet completed "the very last lesson" in the parenting series. Viewing the evidence in the light most favorable to the finding, we conclude that a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *See **In re J.F.C.***, 96 S.W.3d at 266. Therefore, the evidence is legally sufficient. *See id.*; *see also* TEX. FAM. CODE ANN. § 161.001(b)(1)(O). Additionally, giving due consideration to evidence the factfinder could reasonably have found to be clear and convincing, as well as the lack of evidence that J.A. completed the required parenting series, we conclude that the evidence is factually sufficient. *See*

*In re J.F.C.*, 96 S.W.3d at 266; *see also* TEX. FAM. CODE ANN. § 161.001(b)(1)(O).  For all these reasons, we overrule issue two as to J.A.

## DISPOSITION

Having overruled issues one and two as to both A.A. and J.A., we ***affirm*** the trial court's judgment.

BRIAN HOYLE
Justice

Opinion delivered October 31, 2022.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

13



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**OCTOBER 31, 2022**

**NO. 12-22-00187-CV**

**IN THE INTEREST OF S.A. & P.A., CHILDREN**

Appeal from the 294th District Court
of Van Zandt County, Texas (Tr.Ct.No. FM20-00498)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that the decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*