# NO. 12-22-00236-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF* | § | *APPEAL FROM THE 294TH* |
| *N.B. & P.B.,* | § | *JUDICIAL DISTRICT COURT* |
| *CHILDREN* | § | *VAN ZANDT COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

In two issues, B.C. appeals the termination of her parental rights. We affirm.

## BACKGROUND

B.C. is the mother and M.B. is the father of N.B. and P.B.[1] On February 12, 2021, the Department of Family and Protective Services (the Department) filed an original petition for protection of N.B. and P.B., for conservatorship, and for termination of B.C.'s and M.B.'s parental rights. The Department was named temporary managing conservator of the children. The parents were appointed possessory conservators with limited access to and possession of the children.

Following a bench trial, the trial court found, by clear and convincing evidence, that B.C. engaged in one or more of the acts or omissions necessary to support termination of her parental rights under subsection (O) of Texas Family Code Section 161.001(b)(1). The trial court also found that termination of the parent-child relationship between the children and B.C. is in the children's best interest. Based on these findings, the trial court ordered that the parent-child relationship between B.C. and N.B. and P.B be terminated. This appeal followed.

---

[1] M.B. is not a party to this appeal.

1

## TERMINATION OF PARENTAL RIGHTS

Involuntary termination of parental rights embodies fundamental constitutional rights. *Vela v. Marywood*, 17 S.W.3d 750, 759 (Tex. App.–Austin 2000), *pet. denied per curiam*, 53 S.W.3d 684 (Tex. 2001); *In re J.J.*, 911 S.W.2d 437, 439 (Tex. App.—Texarkana 1995, writ denied). Because a termination action "permanently sunders" the bonds between a parent and child, the proceedings must be strictly scrutinized. *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976); *In re Shaw*, 966 S.W.2d 174, 179 (Tex. App.—El Paso 1998, no pet.).

Section 161.001 of the Family Code permits a court to order termination of parental rights if two elements are established. TEX. FAM. CODE ANN. § 161.001 (West 2022); *In re J.M.T.*, 39 S.W.3d 234, 237 (Tex. App.—Waco 1999, no pet.). First, the parent must have engaged in any one of the acts or omissions itemized in the second subsection of the statute. TEX. FAM. CODE ANN. § 161.001(b)(1); *Green v. Tex. Dep't of Protective & Regulatory Servs.*, 25 S.W.3d 213, 219 (Tex. App.—El Paso 2000, no pet.); *In re J.M.T.*, 39 S.W.3d at 237. Second, termination must be in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b)(2); *In re J.M.T.*, 39 S.W.3d at 237. Both elements must be established by clear and convincing evidence, and proof of one element does not alleviate the petitioner's burden of proving the other. TEX. FAM. CODE ANN. § 161.001; *Wiley*, 543 S.W.2d at 351; *In re J.M.T.*, 39 S.W.3d at 237.

The clear and convincing standard for termination of parental rights is both constitutionally and statutorily mandated. TEX. FAM. CODE ANN. § 161.001; *In re J.J.*, 911 S.W.2d at 439. Clear and convincing evidence means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2019). The burden of proof is upon the party seeking the deprivation of parental rights. *In re J.M.T.*, 39 S.W.3d at 240.

## STANDARD OF REVIEW

When confronted with both a legal and factual sufficiency challenge, an appellate court must first review the legal sufficiency of the evidence. *Glover v. Tex. Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex. 1981); *In re M.D.S.*, 1 S.W.3d 190, 197 (Tex. App.—Amarillo 1999, no pet.). In conducting a legal sufficiency review, we must look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its findings were true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).

We must assume that the fact finder settled disputed facts in favor of its finding if a reasonable fact finder could do so and disregard all evidence that a reasonable fact finder could have disbelieved or found incredible. *Id*.

The appropriate standard for reviewing a factual sufficiency challenge to the termination findings is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). In determining whether the fact finder has met this standard, an appellate court considers all the evidence in the record, both that in support of and contrary to the trial court's findings. *Id*. at 27-29. Further, an appellate court should consider whether disputed evidence is such that a reasonable fact finder could not have reconciled that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. The trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Nordstrom v. Nordstrom*, 965 S.W.2d 575, 580 (Tex. App.—Houston [1st Dist.] 1997, pet. denied).

## TERMINATION UNDER SECTION 161.001(B)(1)(O)

In her first issue, B.C. contends the evidence is legally and factually insufficient to terminate her parental rights pursuant to subsection (O) of Texas Family Code Section 161.001(b)(1).

## Applicable Law

Subsection (O) provides that the court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that the parent has

> failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under [Family Code] Chapter 262 for the abuse or neglect of the child.

TEX. FAM. CODE ANN. § 161.001(b)(1)(O). Thus, pursuant to subsection (O), the Department must prove that (1) it has been the child's temporary or permanent managing conservator for at least nine months; (2) it took custody of the child as a result of a removal from the parent under Chapter 262 for abuse or neglect; (3) a court issued an order establishing the actions necessary

for the parent to obtain the return of the child; and (4) the parent did not comply with the court order. *See id.*

Texas courts generally take a strict approach to subsection (O)'s application. *In re D.N.*, 405 S.W.3d 863, 877 (Tex. App.—Amarillo 2013, no pet.). A parent's failure to complete one requirement of her family service plan supports termination under that subsection. *In re J.M.T.*, 519 S.W.3d 258, 267 (Tex. App.—Houston [1st Dist.] 2017, pet. denied).

**Analysis**

On appeal, B.C. does not dispute that (1) the Department has been the children's temporary managing conservator for at least nine months; (2) the Department took custody of the children as a result of a removal from the parent under Chapter 262 for abuse or neglect; and (3) the court-ordered family service plan constituted an order of the trial court establishing the actions necessary for her to be reunited with the children. Nor does B.C. dispute that the evidence showed that she failed to comply with all the terms of the court-ordered family service plan. However, she contends that she substantially complied with the plan and that her failure to comply was outside of her control.

The Family Code provides an affirmative defense for parents who fail to comply with provisions of a court order. TEX. FAM. CODE ANN. § 161.001(d). That section states that the trial court may not order termination under subsection (O) based on the failure of a parent to comply with a specific provision of the order if the parent proves by a preponderance of the evidence that she was unable to comply with specific provisions and made a good faith effort and the failure to comply is not attributable to the fault of the parent. *Id.* B.C. did not plead or invoke this affirmative defense in the trial court and does not cite to this subsection on appeal. The failure to plead an affirmative defense results in waiver. TEX. R. CIV. P. 94. As a result, B.C. waived this affirmative defense.

B.C. concedes that she failed to comply with the terms of her service plan. In her brief, B.C. states that she "substantially complied with the family services plan imposed upon her by the trial court. She technically violated some limited provisions of that order. However, those violations were substantially because of impossibility." As part of her service plan, B.C. was ordered to complete the HEART program "to address the trauma of past abusive relationships and how these relationships can affect their current situation." The evidence at trial showed that B.C. failed to complete the HEART program. B.C. testified that she initially could not enroll

because the program did not have a facility due to COVID and they did not offer remote classes. However, she failed to enroll when the facility did open in December 2021. B.C. admitted that she failed to complete the program. A parent's failure to complete one requirement of her family service plan supports termination under that subsection. *In re J.M.T.*, 519 S.W.3d at 267.

Applying the applicable standards of review, we hold that the evidence is legally and factually sufficient to support the trial court's predicate finding under subsection (O). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(O).

### BEST INTERESTS OF THE CHILDREN

In B.C's second issue, she argues the evidence is legally and factually insufficient to support a finding that termination of her parental rights is in the children's best interest. In determining the best interest of the child, a number of factors have been considered, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

The family code also provides a list of factors that we will consider in conjunction with the above-mentioned *Holley* factors. *See* TEX. FAM. CODE ANN. § 263.307(b) (West 2022). These include (1) the child's age and physical and mental vulnerabilities; (2) the magnitude, frequency, and circumstances of the harm to the child; (3) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (4) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (5) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (6) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (7) whether the child's family demonstrates adequate parenting skills; and (8) whether an adequate social support system consisting of an extended

family and friends is available to the child. *See id.* § 263.307(b)(1), (3), (6), (8), (10), (11), (12), (13).

The evidence need not prove all statutory or *Holley* factors in order to show that termination of parental rights is in a child's best interest. *See Holley*, 544 S.W.2d at 372; *In re J.I.T.P.*, 99 S.W.3d 841, 848 (Tex. App.–Houston [14th Dist.] 2003, no pet.). In other words, the best interest of the child does not require proof of any unique set of factors nor limit proof to any specific factors. *In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.). Undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the child's best interest. *In re M.R.J.M.*, 280 S.W.3d 494, 507 (Tex. App.—Fort Worth 2009, no pet.). But the presence of scant evidence relevant to each factor will not support such a finding. *Id.* Evidence supporting termination of parental rights is also probative in determining whether termination is in the best interest of the child. *See In re C.H.*, 89 S.W.3d at 28-29. We apply the statutory and *Holley* factors below.

## Analysis

The evidence at trial showed that N.B. and P.B. were eight and six years old, respectively, at the time of trial. The children had been in the Department's custody for eighteen months. The record indicated two gaps in which B.C. failed to visit the children: the three months the children resided in Louisiana and a three-month period in which B.C. refused to submit to a drug test. The guardian ad litem, Joni Lunsford, testified that N.B.'s behavior stabilized during the periods of no visitation. However, the missed visits caused N.B. "a lot of distress" because he was worried that B.C. was involved in an accident or had taken her own life. According to Lunsford, she told B.C. that N.B. gets upset by the missed visits, but B.C. still continued to miss visits. B.C. admitted she missed three visits during the case and that N.B. worried something had happened to her when she missed.

According to Lunsford, N.B. told her approximately one week before trial that B.C. said her boyfriend, W.T., moved back to the home. The children seemed worried about W.T.'s presence and P.B. focused on W.T. "needing to be nice." The children previously mentioned seeing broken glass, walls punched, and things thrown from the bedroom. B.C. denied telling the children W.T. moved back. She claimed P.B. had a close bond with W.T.

The children have lived in the same foster home since August 2021. It is uncertain whether the family would be willing to adopt the children; however, they are willing to keep the

children until a permanent home can be found. While in the foster home, N.B. lost weight by eating healthier and had his teeth repaired. According to Nicole Petty, a Department caseworker, the children are "thriving" in the home, doing well academically, and N.B. is a "healthier version of himself."

According to B.C., the children want to be with her. Lunsford testified that P.B. "wants to live in a clean home. She's maintained that for a long time." She further testified that N.B. wants to live with B.C. "He loves her. He very much wants to take care of her. And he thinks that's his job." Lunsford stated she does not believe N.B.'s position is emotionally healthy for an eight-year-old.

B.C. admitted that her relationship with the children's father, M.B., was characterized by domestic violence. She stated that M.B. kept the children away from September through November 2020, just prior to the Department's involvement. B.C. confirmed M.B. has a history of methamphetamine abuse and a criminal history; however, she admitted to never filing any legal documents to prohibit his access to the children.

Jessica Harris, a Department investigator, testified that she investigated allegations of drug use, domestic violence, and unsuitable home conditions in February 2021. During the investigation, B.C. admitted that she and W.T. used methamphetamine in the home while the children were present. However, at trial, B.C. testified that she had not used methamphetamine in the two months prior to the children being removed and claimed she never used drugs while they were present. Harris further testified that B.C. initially stated she would take a drug test but later refused. When Harris spoke with W.T., he became "very argumentative." Harris also confirmed that it was reported that the domestic abuse occurred in front of the children. Harris described the home as "cluttered" but not hazardous. After a failed safety plan, the children were removed from the home.

As noted above, B.C. failed to comply with the provisions of her service plan. B.C. stated that she relapsed and used methamphetamine during the first five months of the case. She claimed to be drug-free afterwards. However, she failed to participate in random drug testing throughout the case. B.C. blamed poor phone reception for her failure to communicate with the Department caseworkers. She also claimed to have lived in other places for more than half of the case. In addition, she declined to allow a single home visit during the pendency of the case. Lunsford went outside B.C.'s home and observed the conditions as unsafe, stating that "[t]here

was lots of wood and just discarded items all over the yard. So I don't believe that she can provide them a safe home." Furthermore, B.C. failed to complete the domestic violence classes through the HEART program.

B.C. testified that it was not in the children's best interest for her rights to be terminated. She stated that she lives in the same home that she did when the children were removed; however, she claimed W.T. no longer lives there. B.C. testified that she does not pay rent and has no written lease, but that W.T.'s mother owns the home and would allow her stay if she continued working for her. She further testified that if the children were returned to her, she would seek out counseling. She explained that she has learned that the children need stable people around them.

Petty testified that she was concerned about the children returning to B.C.'s care. According to Petty, B.C. is "not acknowledging or taking responsibility for her action or inaction that led the children into [the Department's] care." Specifically, Petty testified as follows:

> . . . When I stopped the case in May, at that time [B.C.] did not have stable housing. She didn't have stable income. She didn't have stable transportation. I was unable to go see anywhere that she was staying. She stated that she was, you know, basically spending the night on friends' couches. That's not permanency. That's not stability. Children need stability. They need a home and food and those things. And at that time it was unclear if she would be capable of providing those things.
>
> Q. In what you've observed from [B.C.], in your professional opinion, do you think she has the skills to take care of the emotional needs for the children?
>
> A. I do not.

Lashundra Ellis took over the case and testified that she made several attempts to contact B.C. But B.C. cancelled a home visit. Ellis attempted to reschedule, planning to drug test her when they met, but she was unable to contact B.C. Lunsford opined it was not in the children's best interest to return to B.C. because the home was unsafe and B.C. could not meet the children's needs.

After viewing the evidence in the light most favorable to the trial court's best interest finding and applying the statutory and *Holley* factors, we conclude that a reasonable trier of fact could have formed a firm belief or conviction that termination of B.C.'s parental rights was in the best interest of the children. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re J.F.C.*, 96 S.W.3d at 266. Accordingly, we overrule B.C.'s second issue regarding best interest.

## DISPOSITION

Having overruled B.C.'s first and second issues, we ***affirm*** the judgment of the trial court.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered November 9, 2022.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

9



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**NOVEMBER 9, 2022**

**NO. 12-22-00236-CV**

**IN THE INTEREST OF N.B. & P.B., CHILDREN**

Appeal from the 294th District Court
of Van Zandt County, Texas (Tr.Ct.No. FM21-00059)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*