39 S.W.3d 234 (1999)
In the Interest of J.M.T., A Child, Appellant
No. 10-99-276-CV.
Court of Appeals of Texas, Waco.
December 1, 1999.
*236 Lori H. Hartgroves, Waco, for appellant.
Steve Robertson, Clifton, for appellee.
Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

OPINION
GRAY, Justice.
A father's parental rights were terminated. In a bench trial the court determined he had failed to support the child in accordance with his abilities and also found that termination was in the best interest of *237 the child. We are called upon to decide whether the evidence supported the termination and whether the trial court erred in not entering a judgment for the arrearage that resulted in the termination. Although the trial was very short, we hold that the trial court's findings are based upon clear and convincing evidence and accordingly we affirm the judgment.

BACKGROUND FACTS
Sonja Word and Robert Thomas were divorced. They were named joint managing conservators of their child, J.M.T. Thomas was ordered to pay child support. Thomas paid child support for about two years. However, from March 1996 until February 1998, no child support was paid.
In February of 1998, Word filed a pleading entitled "Original Petition to Terminate Parent-Child Relationship; Alternatively, For Enforcement of Child Support Order." A guardian ad litem was appointed to represent the interest of the child. After a relatively short proceeding, lasting approximately two hours, the trial court terminated the parental rights of Thomas. Thomas's motion for new trial was denied and he perfected this appeal.

ISSUES ON APPEAL
Thomas challenges the termination of his parental rights claiming that there was no evidence, or alternatively, insufficient evidence to support the findings that he failed to support the child in accordance with his ability and that termination was in the best interest of the child. The burden of proof and the standard of review are the same for each of these findings. Thus, we will discuss the burden of proof at trial and our standard of review and then apply the standard to the evidence presented at trial on each of the challenged findings.
Additionally, Word has filed a notice of appeal and by one issue complains that the trial court erred when it did not reduce the child support arrearage to judgment.

THE TWO PRONG TEST FOR TERMINATION OF PARENTAL RIGHTS
The natural right existing between a parent and child is of constitutional dimension. Holick v. Smith, 685 S.W.2d 18, 20 (Tex.1985). The right to raise one's child has been characterized by the United States Supreme Court as essential, as a basic civil right, and as a right far more precious than property rights. Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551, 558 (1972). A termination decree is complete, final, irrevocable, and divests for all time that natural right as well as all legal rights, privileges, duties, and powers with respect to each other except for the child's right to inherit. Holick, 685 S.W.2d at 20. Termination is a drastic remedy and is of such weight and gravity that due process requires the petitioner to justify termination by "clear and convincing evidence." Spangler v. Texas Dept. of Protective and Regulatory Services, 962 S.W.2d 253, 256 (Tex.App.-Waco 1998, no pet.). Thomas does not challenge any aspect of these proceedings on constitutional bases. His complaint is that there is no evidence, or alternatively insufficient evidence, of the elements required for termination under the applicable statute.
In proceedings to terminate the parent-child relationship brought under Section 161.001 of the Family Code, the petitioner must establish two elements. First, petitioner must prove one or more acts or omissions enumerated under the first subsection of the statute. Second, petitioner must prove that termination of the parent-child relationship is in the best interest of the child. Tex. Fam. Code Ann. § 161.001(1), (2) (Vernon 1995 & Supp. 1998); Richardson v. Green, 677 S.W.2d 497, 499 (Tex.1984). The fact finder must find both elements are established by clear and convincing evidence, and proof of one element does not relieve the petitioner of the burden of proving the other. Holley v. Adams, 544 S.W.2d 367, 370 (Tex.1976); *238 Wiley v. Spratlan, 543 S.W.2d 349, 351 (Tex.1976).

BURDEN OF PROOF: CLEAR AND CONVINCING EVIDENCE
Termination of parental rights requires the petitioner to justify termination by clear and convincing evidence of each element. In re G.M., 596 S.W.2d 846, 847 (Tex.1980). This standard is defined as "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Spangler, 962 S.W.2d at 256.

LEGAL SUFFICIENCY: STANDARD OF REVIEW ON APPEAL
We use the traditional "no-evidence" standard of review in reviewing a legal sufficiency complaint of a finding which must be established by clear and convincing evidence. We consider only the evidence which tends to support the fact finder's findings and disregard all evidence and inferences to the contrary. Lucas v. Texas Dep't of Protective and Regulatory Services, 949 S.W.2d 500, 502 (Tex.App.-Waco 1997, writ denied). An appellate court will review a "no-evidence" or legal sufficiency complaint by considering only the evidence and inferences tending to support the finding to determine if there is more than a scintilla of probative evidence in the record to support the decision. In the Interest of D.L.N., 958 S.W.2d 934, 936 (Tex.App.-Waco 1997, pet. denied, pet rehear'g denied); See Leitch v. Hornsby, 935 S.W.2d 114, 118 (Tex.1996); Lucas, 949 S.W.2d at 502. If there is any evidence in the record to support the finding of the trial court, we will overrule the appellant's legal sufficiency complaint. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661-62 (1951).

FACTUAL SUFFICIENCY: STANDARD OF REVIEW ON APPEAL
When the trier of fact is required to make a finding by clear and convincing evidence, the court of appeals will only sustain an issue alleging factually insufficient evidence if the trier of fact could not reasonably find the existence of the fact to be established by clear and convincing evidence. Spangler, 962 S.W.2d at 257. Thus, in a case where the burden of proof at trial is clear and convincing, an issue complaining that the evidence is factually insufficient will be sustained only when: (1) the evidence is factually insufficient to support a finding by clear and convincing evidence; or (2) a finding is so contrary to the weight of contradicting evidence that no trier of fact could reasonably find the evidence to be clear and convincing. Id.

APPLICATION OF THE TWO PRONG TERMINATION TEST
Termination of parental rights involves an application of a two prong test. There must be a predicate act which constitutes a violation of one of the provisions listed in the Family Code. Additionally, it must be in the best interest of the child that the parent-child relationship be terminated.

ACTS OR OMISSIONS UNDER THE FAMILY CODE
In order to terminate Thomas's parental rights, Word was required to prove at least one of the acts or omissions enumerated in the Family Code. Tex. Fam. Code Ann. § 161.001(1) (Vernon 1995 & Supp.1998). One of the acts upon which termination can be based is a showing of failure to support the child in accordance with one's ability for a period of one year ending within six months of the date of the filing of the petition. Id. at § 161.001(1)(F).
The Evidence
It was undisputed at trial that Thomas had paid no child support for two years. Evidence of failure to pay alone is not adequate to support a violation of the statute. *239 There must be some evidence of ability to support, and that the support was not provided.
Thomas was ordered to pay support in the amount of $276 per month. At no point does Thomas claim that he attempted to have the amount modified because his ability to pay had changed. Indeed, Thomas admitted that he did not pay and acknowledged that he was $7,290 in arrears.
When the trial court establishes the amount of child support to be paid by a parent, the court must consider the ability to contribute to the child's support. In the Interest of R.R.F., 846 S.W.2d 65, 68 (Tex.App.-Corpus Christi 1992, writ denied). The child support order includes within it an implied finding that the obligor has the means or ability to pay the amount ordered. Id.
At the time of trial Thomas was employed by a paging company and was willing to have his wages garnished in order to make up the arrearage. He testified that he had been working in a family business which was not making any profit. However, at no point during the trial did he attempt to prove what his income was nor did he seek to introduce into evidence any records of the business which might have shown that the business was failing. Indeed, when asked why he did not seek more financially rewarding work, he replied that his needs were being met. The trial court could assume that "his needs" included enough income to pay his court ordered child support but was not used for that purpose, or that he did not view his obligation to support as essential.
More importantly, it is not just that he failed to pay the court ordered child support, although that alone may have been enough, but he did not offer any financial support of his child whatsoever during this two year period.
The evidence included a review of Thomas's work history. Basically, Thomas had paid child support regularly until he moved back to Amarillo to live with his mother and work for her in her flower shop. He ceased to draw regular checks, because as he testified, "his needs were met" and they were putting everything he made back into the flower shop to try to make it survive. The evidence also established that Thomas was not disabled and had no medical impairments.
Additionally Thomas testified as follows:
Question: Do you understand that you have failed in that [obligation to provide financial support] and that you have given the Court no legal excuse for not having performed those responsibilities?
Answer: I understand that.
Question: Do you understand that you don't have the luxury of working for no salary if it prevents you from paying child support?
Answer: I understand that.
With this evidence in mind, we review the complaints about the sufficiency of the evidence.
Failure to support-legal sufficiency review.
In considering the evidence in a light which supports the finding made by the trier of fact, we conclude that there was more than a scintilla of evidence that Thomas did not pay child support according to his ability for a period of twelve months ending within six months prior to the date of filing the petition. We overrule Thomas's legal sufficiency challenge of the evidence supporting the first prong required to terminate his parental rights.
Failure to support-factual sufficiency review
The trial court found Thomas failed to provide support in accordance with his abilities. Even considering the evidence that might indicate that Thomas was unable to pay the support that had been ordered, we hold that the trial court's finding that Thomas failed to provide support in accordance with his abilities is not so contrary to the weight of contradicting evidence that no trier of fact could reasonably *240 find the evidence to be clear and convincing. Further, we hold the evidence is factually sufficient to support that finding by clear and convincing evidence. Spangler, 962 S.W.2d at 257. We overrule Thomas's factual sufficiency challenge of the evidence supporting the first prong required to terminate his parental rights.
BEST INTEREST OF THE CHILD
Thomas argues that there is no evidence or insufficient evidence to support the finding by the trial court that termination of the parent-child relationship was in the best interest of J.M.T. There is a strong presumption that the best interest of children will be served by preserving the parent-child relationship. Wiley v. Spratlan, 543 S.W.2d at 352. Thus, the burden of proof upon the issue of best interest of the child is upon the one seeking to deprive the natural parent of their parental rights and, as previously discussed, has the higher burden that the finding must be established by clear and convincing evidence. Herrera v. Herrera, 409 S.W.2d 395, 396 (Tex.1966). The findings of fact made by the trial court include only the statement; "The court finds that termination of the parent-child relationship between Robert L. Thomas and the child, J.M.T., is in the best interest of the child." This conclusory statement provides us with no guidance as to the considerations or evidence relied upon by the court in making the finding of the best interest of J.M.T.
The Texas Supreme Court has recognized several factors which may be considered in determining when termination is in a child's best interest. Holley v. Adams, 544 S.W.2d at 372. These include:
1. The desires of the child;
2. The emotional and physical needs of the child now and in the future;
3. The emotional and physical danger to the child now and in the future;
4. The parental abilities of the individuals seeking custody;
5. The programs available to assist these individuals to promote the best interest of the child;
6. The plans for the child by these individuals or by the agency seeking custody;
7. The stability of the home or proposed placement;
8. The acts/omissions of the parent which may indicate that the existing parent-child relationship is not proper; and
9. Any excuse for the acts/omissions of the parent.
Id.
This listing is by no means exhaustive, but does include the most important considerations. No single consideration is controlling. However, the analysis of one factor may be adequate in a particular factual situation to support a finding that termination is in the best interest of the child. We note that the Holley test focuses on the best interest of the child, not the best interest of the parent.
Review of the Evidence
Because Thomas challenges the sufficiency of the evidence on the determination of best interest of the child, we review the evidence in relation to each of the Holley factors.
1. The desires of the child.
Word admitted that J.M.T. loves his natural father. She also testified that J.M.T. wants both his natural father and his step-father in his life.
2. The emotional and physical needs of the child now and in the future.
There was little direct testimony regarding this consideration. However, there was substantial circumstantial evidence.
Sonja Word
Word testified that J.M.T. "has to get angry with her before he can leave" to go on visitation. In her opinion, Thomas is a bad influence over J.M.T. because he permits the child to watch MTV and scary *241 movies which cause him to stay awake at night. Additionally she testified that J.M.T. often curses when he returns from visitation with his father, is sometimes dirty and has not had a bath for a day or two. She also testified that J.M.T. told her that Thomas does not allow him to talk about his little brother or his step-father. Word testified that Christian music is usually the only music played in her home but that country music is sometimes allowed.
In her opinion, visitation with his natural father is bad for J.M.T. because it takes him away from his friends in his home town and because it takes away from vacation time with "the Word family," including his little brother and step-father. The readjustment after visitation is difficult and so she has placed J.M.T. in counseling for roughly the last two years which she schedules just prior to or after visitation. She testified that J.M.T. has been better behaved since she spoke with him about the possibility of termination.
Robert Thomas
In addition to his testimony concerning his failure to pay, Thomas testified that he is currently living in his mother's flower shop, sleeping on the floor, because he broke up with his girlfriend with whom he had been living. He also testified that prior to living with his girlfriend he had lived in a house behind the flower shop, and prior to that, with his mother who was working at "Recovery Center for Recovering Alcoholics" and they provided her a house in which to live. Thomas was asked: "You think it's in the best interest of the child to have a father teach him those kinds of economics and ethics?" To which Thomas responded: "No, it's not."
During the most recent visitation, Thomas and J.M.T. stayed in the home of his girlfriend with whom he was living at the time and with the child's paternal grandmother. It was his opinion that J.M.T.'s adjustment between families for visits is very smooth. He stated that J.M.T. is sometimes angry but rarely when he is spending time with Thomas. He also testified that J.M.T. can get frustrated when something does not go his way. Thomas feels that the boy's anger is typical of an 8 year old who has gone through a divorce. He also testified that he and J.M.T. have serious conversations just before bedtime and then say their evening prayers. Furthermore, Thomas says that he tries to stick to the schedule used by Word in order to minimize disruption.
Thomas testified that he loves J.M.T. and that the child has a close relationship with his paternal grandmother. Thomas testified that he and the child go fishing, bowling, camping, ice skating, and attend sports activities together as well as spending normal days together. Thomas denied that he forbids J.M.T. to talk about his step-father and brother though he does point out that he corrected J.M.T. when the boy referred to his step-father as "Daddy." It was his opinion that being a child of divorced parents, living in a home with a brother who had both parents in the home, was the primary reason for J.M.T.'s anger.
Thomas testified that he and J.M.T. listen to the radio and sing rock-and-roll music together, but that he does not have MTV or cable. He admitted that his former girlfriend did have cable but testified that J.M.T. was not permitted to watch MTV. He admitted that some of the songs J.M.T. had committed to memory included "Dirty Deeds Done Dirt Cheap" by AC/ DC, "I Want You to Want Me" by Cheap Trick, and portions of "Ackey Breaky Heart" and "Cherokee Choctaw." He testified that he made a music tape for the boy but censured the music for curse words. He claims to have confronted J.M.T. about his use of curse words and that J.M.T. claimed that he learned the words at school. Thomas admits that he has used a curse word in front of J.M.T. but that he works at not using such language around him. Thomas acknowledged that J.M.T.'s paternal grandmother does let a curse word slip occasionally. Finally, he admitted that the last day together is *242 usually filled with activity and thus J.M.T. does not always bathe the night before he comes home. He sends the boy home in the same clothes he arrived in, which are sometimes old and torn.
Diane Hightower
Hightower testified that she is a good friend to the Words, knows them from church and the community, and provides legal assistance to the abstract and title business owned by Word's husband. She testified that J.M.T. attends church activities and is in the program for gifted and talented children at school. It was her opinion that when J.M.T. returns from visitation with his father, he is emotional, has difficulty adjusting, and sometimes has behavioral problems. She admitted that she has never met Thomas, has never seen the child with his father and has never talked to J.M.T. about his father. It was her opinion that termination was in the best interest of the child.
Reverend Michael Voigts
Voigts testified that he knows the Words because they attend his church. Voigts considers the Words to be leaders in his church and the local community. He testified that after visitation with Thomas, J.M.T. is often cynical, negative, and does not want to talk about the visits. His opinion was that termination would be in the best interest of the child. Voigts admitted that he has never spoken to J .M.T. about termination and that the child has never said anything negative about his father or his visitation time. He also admitted that he was very sympathetic to the Words because of their position within his church. It was his testimony that the step-father would like to adopt J.M.T.
Voigts also testified that "I've never had an opinion like this before because I feel the ties between a parent and a child are very strong. But in this case there is no doubt in my mind whatsoever that this relationship should be terminated." When challenged on his expertise and training to form such an opinion he responded that his education to become a pastor included some training in early childhood development.
Barbara Harris
Harris testified that she is a friend of Sonja Word and her husband. She testified that she knows the Words from Alcoholic's Anonymous, where both of them attend. She testified that Sonja Word has at least five years of sobriety. It was her opinion that both of the Words are active in their sobriety. The Words bring both of their children to Alcoholic's Anonymous meetings. She testified that she feels Sonja Word to be a nurturing parent. She admitted that she does not know Thomas, has never seen the child with his father, and has never spoken with J.M.T. about the possibility of termination.
3. The emotional and physical danger to the child now and in the future.
There is no evidence of great emotional or physical danger to J.M .T. While adjustments from home to home appear to be difficult, there is no testimony that such adjustments pose a long term danger to the child. The record reflects a concern for the child by both natural parents. Word testified that she did not believe that Thomas posed a physical danger to J.M.T.
4. The parental abilities of the individuals seeking custody.
There is very little testimony as to the parental ability of either parent. Voigts, Harris, and Hightower all spoke on behalf of Word as a good mother in general. There was no specific testimony directed towards Thomas's parenting abilities other than the general testimony previously summarized. There is even less testimony concerning the parenting ability of the stepfather who may seek custody in the event of termination.
5. The programs available to assist these individuals to promote the best interest of the child.
As to programs which are available to promote the child's best interest, the record *243 reflects that J.M.T. is enrolled in school and attends church.
6. The plans for the child by these individuals or by the agency seeking custody.
Though there was no joint adoption proceeding before the trial court and the stepfather did not testify, there is evidence that the stepfather would like to adopt the child. We have held that a desire for adoption by a step-parent is an additional consideration that can factor into a best interest of the child determination. Williams v. Gaul, 687 S.W.2d 85, 88 (Tex. App.Waco 1985, no writ) citing Dressler v. Aldridge, 567 S.W.2d 48, 50 (Tex.Civ. App.El Paso 1978, no writ). However, the evidence of the stepfather's desire to adopt the child is very weak, and thus this factor bears very little weight in our analysis. We find no other evidence regarding specific plans for J.M.T. by any party or person.
7. The stability of the home or proposed placement.
The evidence showed a certain instability in Thomas's housing and work arrangements. His work history since the time of the divorce is discussed earlier in this opinion. This history tends to show that Thomas had chosen to be underemployed in an effort to try to help his mother's flower shop, while disregarding other obligations. He was living in his mother's business, sleeping on the floor, because he had broken up with his girlfriend with whom he had been living. This is not compelling evidence of stability for the home of a child.
On the other hand the evidence was that the home of Word was somewhat stable. The stepfather owns a business in which both parents work. There was testimony of being established and involved in their community and church activities.
8. The acts/omissions of the parent which may indicate that the existing parent-child relationship is not proper.
There was nothing in the evidence to suggest that either parent was abusing J.M.T. in any manner.
9. Any excuse for the acts/omissions of the parent.
In the testimony quoted earlier in this opinion, Thomas admitted that he had no excuse for failing to support J.M.T.
Best Interest of the Child-Legal Insufficiency Review
In considering a legal insufficiency issue we consider only the evidence which tends to support the fact finder's findings and disregard all evidence and inferences to the contrary. Lucas, 949 S.W.2d at 502. A legal sufficiency challenge fails if there is more than a scintilla of probative evidence in the record to support the decision. In the Interest of D.L.N., 958 S.W.2d at 936. We hold that there is some evidence that supports the trial court's determination that termination of the parent-child relationship was in the best interest of J.M.T. We overrule Thomas's legal sufficiency challenge on the best interest prong of the test.
Best Interest of the Child-Factual Sufficiency Review
We have conducted our analysis by a detailed review of the evidence on each of the Holley factors. We do not set aside a trial court determination of the best interest of the child simply because we do not agree with it. We must limit our role to reviewing the trial court's determination by the applicable standard of review.
We also note that the guardian ad litem put on no testimony, made no written report, and did not order a social study. The record reflects that he recommended against termination based upon a brief interview with J.M.T. At least one court has held that the limited participation of a guardian ad litem should also be considered when the trial court determines the best interest of the child. Turner v. Lutz, 685 S.W.2d 356, 360 (Tex.App.-Austin 1984, no writ). Thus we have also considered *244 this additional factor in our review of the trial court's findings.
There was very little evidence that termination was not in the best interest of J.M.T. Accordingly we hold that the finding that termination of the parent/child relationship is in the best interest of J.M.T. is not so contrary to the weight of contradicting evidence that no trier of fact could reasonably find the evidence to be clear and convincing. Additionally, upon review of the evidence in support of termination, we hold that the finding is supported by clear and convincing evidence. We overrule Thomas's factual insufficiency challenge on the best interest prong of the test.

CROSS APPEALTHE ISSUE OF ARREARAGE
In her cross appeal, Word asserts that the trial court erred by failing to reduce the child support arrearage to judgment. Word asks that we reverse and render judgment in the amount of $7,290 plus statutory interest from April 1, 1996. We note that Word filed a timely notice of appeal and thus has invoked our jurisdiction to review this issue.
At trial, Thomas conceded that he owed $7,290 in arrearage. In its conclusions of law, the court stated that this amount was owed in back child support. Petitioner's Exhibit # 1, which was admitted into evidence, contains a payment history report in support of this finding. Under the Family Code, a child support payment not timely made constitutes a final judgment for the amount due including interest. TEX. FAM. CODE ANN. §§ 157.261 & 157.265 (Vernon 1995 & Supp.1998). The payment of arrearage compensates for the wrong to the child at least as much as it reimburses the custodial parent for monies spent on the child. Past due child support is properly characterized as an unfulfilled duty to the child rather than a debt to the custodial parent. Williams v. Patton, 821 S.W.2d 141, 145 (Tex.1991). The trial court does not have discretion to increase or reduce the arrearage or the interest. Id. at § 157.262 (Vernon 1995 & Supp.1998); Williams v. Patton, 821 S.W.2d at 145.
However, we find nothing that alleviates the need for Word to have pleadings to support the relief requested. Word pleaded in the alternative. Only in the event that the trial court failed to terminate the parental rights of Thomas did Word request a judgment for the arrearage. Because the trial court's judgment ordered termination, and no trial amendment was filed modifying the relief requested, Word has no pleading to support the entry of a judgment for the arrearage. Accordingly the trial court did not err when he refused to enter a judgment for the arrearage. Word's issue on appeal is overruled.

CONCLUSION
Having overruled Thomas's legal and factual issues challenging each of the trial court's findings required to support a termination of his parental rights, the trial court's judgment of termination is affirmed. Additionally, we have also overruled Word's issue challenging the trial court's failure to reduce the back due child support arrearage to judgment. Accordingly, having overruled all the issues brought for our review, the judgment of the trial court is affirmed.