# NO. 12-23-00002-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF T.S.S.C.,* | § | *APPEAL FROM THE* |
| | § | *COUNTY COURT AT LAW NO. 2* |
| *M.M.H. AND M.K.W., CHILDREN* | § | *ANGELINA COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

In two issues, K.G. appeals the trial court's order terminating her parental rights. We affirm.

### BACKGROUND

K.G. is the mother of T.S.S.C, M.M.H, and M.K.W. The children's fathers are S.C., N.H., and W.W., respectively. On August 25, 2020, the Texas Department of Family and Protective Services (the Department) filed an original petition for protection of a child, for conservatorship, and for termination of parental rights. The Department was appointed temporary managing conservator of the children, and K.G. and S.C. were allowed limited access to the children.

After a trial on the merits, the trial court ordered the termination of K.G.'s[1] parental rights based on findings that clear and convincing evidence supports such termination under subsections (D), (E), (O), and (P) of Texas Family Code Section 161.001(b)(1) and such termination is in the children's best interest. This appeal followed.

---

[1] The court also ordered the termination of S.C.'s and W.W.'s parental rights. They are not parties to this appeal.

In K.G.'s first issue, she argues that the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights is in the children's best interest.

**Standard of Review and Applicable Law**

Involuntary termination of parental rights embodies fundamental constitutional rights. *Vela v. Marywood*, 17 S.W.3d 750, 759 (Tex. App.—Austin 2000), *pet. denied per curiam*, 53 S.W.3d 684 (Tex. 2001); *In re J.J.*, 911 S.W.2d 437, 439 (Tex. App.—Texarkana 1995, writ denied). Because a termination action "permanently sunders" the bonds between a parent and child, the proceedings must be strictly scrutinized. *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976); *In re Shaw*, 966 S.W.2d 174, 179 (Tex. App.—El Paso 1998, no pet.).

Section 161.001 of the family code permits a court to order termination of parental rights if two elements are established. TEX. FAM. CODE ANN. § 161.001 (West 2022); *In re J.M.T.*, 39 S.W.3d 234, 237 (Tex. App.—Waco 1999, no pet.). First, the parent must have engaged in any one of the acts or omissions itemized in the second subsection of the statute. TEX. FAM. CODE ANN. § 161.001(b)(1); *Green v. Tex. Dep't of Protective & Regulatory Servs.*, 25 S.W.3d 213, 219 (Tex. App.—El Paso 2000, no pet.); *In re J.M.T.*, 39 S.W.3d at 237. Second, termination must be in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b)(2); *In re J.M.T.*, 39 S.W.3d at 237. Both elements must be established by clear and convincing evidence, and proof of one element does not alleviate the petitioner's burden of proving the other. TEX. FAM. CODE ANN. § 161.001; *Wiley*, 543 S.W.2d at 351; *In re J.M.T.*, 39 S.W.3d at 237.

The clear and convincing standard for termination of parental rights is both constitutionally and statutorily mandated. TEX. FAM. CODE ANN. § 161.001; *In re J.J.*, 911 S.W.2d at 439. Clear and convincing evidence means "the measure of degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2019). The burden of proof is upon the party seeking the deprivation of parental rights. *In re J.M.T.*, 39 S.W.3d at 240.

When confronted with both a legal and factual sufficiency challenge, an appellate court must first review the legal sufficiency of the evidence. *Glover v. Tex. Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex. 1981); *In re M.D.S.*, 1 S.W.3d 190, 197 (Tex. App.—Amarillo 1999, no pet.). In conducting a legal sufficiency review, we must look at all the evidence in the light most

favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its findings were true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the fact finder settled disputed facts in favor of its finding if a reasonable fact finder could do so and disregard all evidence that a reasonable fact finder could have disbelieved or found incredible. *Id.*

The appropriate standard for reviewing a factual sufficiency challenge to the termination findings is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). In determining whether the fact finder has met this standard, an appellate court considers all the evidence in the record, both that in support of and contrary to the trial court's findings. *Id.* at 27-29. Further, an appellate court should consider whether disputed evidence is such that a reasonable fact finder could not have reconciled that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. The trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Nordstrom v. Nordstrom*, 965 S.W.2d 575, 580 (Tex. App.—Houston [1st Dist.] 1997, pet. denied).

## Best Interest of the Child

In determining the best interest of the child, a number of factors have been considered, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

The family code also provides a list of factors that we will consider in conjunction with the *Holley* factors. *See* TEX. FAM. CODE ANN. § 263.307(b) (West 2019). These include (1) the child's age and physical and mental vulnerabilities; (2) the magnitude, frequency, and circumstances of the harm to the child; (3) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (4) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (5) the willingness and ability of the

child's family to seek, accept, and complete counseling services and cooperate with and facilitate an appropriate agency's close supervision; (6) the willingness and ability of the child's family to effect positive environmental and personal changes in a reasonable period of time; (7) whether the child's family demonstrates adequate parenting skills; and (8) whether an adequate social support system consisting of an extended family and friends is available to the child. *See id.* § 263.307(b)(1), (3), (6), (8), (10), (11), (12), (13).

The evidence need not prove all statutory and *Holley* factors to show that termination of parental rights is in a child's best interest. *See Holley*, 544 S.W.2d at 372; *In re J.I.T.P.*, 99 S.W.3d 841, 848 (Tex. App.—Houston [14th Dist.] 2003, no pet.). In other words, the best interest of the child does not require proof of any unique set of factors nor limit proof to any specific factors. *In re D.M.*, 58 S.W.3d 801, 815 (Tex. App.—Fort Worth 2001, no pet.). Undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the child's best interest. *In re M.R.J.M.*, 280 S.W.3d 494, 507 (Tex. App.—Fort Worth 2009, no pet.). But the presence of scant evidence relevant to each factor will not support such a finding. *Id.* Evidence supporting termination of parental rights is also probative in determining whether termination is in the best interest of the child. *See In re C.H.*, 89 S.W.3d at 28-29.

## Analysis

The evidence at trial showed that T.S.S.C., M.M.H, and M.K.W. were seven, five, and three years old, respectively, at the time of trial. Two years earlier, in August 2020, they were removed from K.G.'s and W.W.'s home after K.G. and W.W. were found to be using methamphetamine while the children were in the home. Service plans were created for the parents. K.G. completed an inpatient drug rehabilitation program and obtained a job, housing, and protective orders against W.W. and K.G.'s friend S.B., who had a history of marijuana use and became "physical" when she and K.G. "got into it."

In September 2021, the trial court granted K.G. a monitored return of the children. For several months, the return went well except for some issues with the children missing school and appointments. In February 2022, the court ordered the end of the monitored return after M.K.W. tested positive for marijuana, K.G. allowed S.B. and W.W. to have contact with the children, and K.G. provided false documentation of employment when she had not worked since December.

Following the failed monitored return, K.G.'s efforts to reunite with her children were minimal. Her service plan was revised to add more parenting classes, but she failed to attend them. In March 2022, K.G. tested positive for methamphetamine and PCP. Her service plan was then revised to add a substance abuse assessment and treatment. K.G. completed the assessment, the results of which indicated she needed inpatient treatment. She went to the treatment center but left without completing her course of treatment. K.G. testified that if she were drug tested, she would test positive for methamphetamine because her last use was "yesterday." K.G. worked only four days during this period and was living with a friend at the time of trial.

In addition to K.G.'s ongoing substance abuse, Department and CASA representatives were concerned about the ill effects on the children of K.G. being in their lives only sporadically. In the seven months following the failed monitored return, K.G. had one phone call and one virtual contact with T.S.S.C. A second virtual contact was scheduled, but K.G. failed to attend. In July, during a sibling visit, K.G. spoke with the children on the phone. When the call ended, M.M.H. cried and was distant from her siblings for the rest of the visit. For the rest of the weekend, she wet herself and was unable to sleep. M.M.H.'s play therapist noticed regression in her therapy after the call. Her play themes reverted to the abandonment and lack of safety themes she exhibited in the beginning of her therapy. After this incident, the Department and CASA decided that K.G. and M.M.H. should speak only in a counseling setting. K.G. maintained regular contact with M.K.W. for a while, but for the last few weeks, she failed to call at the appointed times.

Department conservatorship caseworker Dah-Mairi Scroggins testified that the children were thriving in their placements. Their permanency goal was relative adoption. T.S.S.C. was currently in a nonadoptive foster home, but the Department was working toward placing him with a cousin in Kansas. T.S.S.C. and the cousin were in phone communication and had a great bond and relationship. M.M.H. was placed with her sister. CASA representative Patrina Mitchell testified that the sisters have a bond and M.M.H. was doing very well in the placement. M.K.W. was in the same placement since the case began, and his foster parents maintained contact with him while he was with K.G. on the monitored return. M.K.W. was very comfortable in the placement. He called his foster parents "Granny" and "Papa," and they wanted to adopt him.

The older children wanted to see K.G. but did not say that they wanted to live with her. Scroggins and Mitchell acknowledged that the children loved K.G., but they believed

termination was in their best interest because of K.G.'s consistent substance abuse and the children's need for permanency and stability.

Reviewing the evidence under the appropriate standards, including the statutory and *Holley* factors, we conclude that a reasonable trier of fact could have formed a firm belief or conviction that termination of K.G.'s parental rights was in the children's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2). Accordingly, we overrule K.G.'s first issue.


## CONSERVATORSHIP

In K.G.'s second issue, she argues that the trial court erred by appointing the Department as sole managing conservator without appointing her as a possessory conservator.

### Standard of Review and Applicable Law

"The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." TEX. FAM. CODE ANN. § 153.002 (West 2014). The trial court is given wide latitude in determining the best interests of a minor child. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). In contrast to termination findings, conservatorship determinations are governed by a preponderance of the evidence standard. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). The appointment of a conservator is subject to review for abuse of discretion and may be reversed only if the decision is arbitrary and unreasonable. *Id.* (citing *Gillespie*, 644 S.W.2d at 451).

The Texas Family Code creates a rebuttable presumption that a parent will be named a child's managing conservator, unless the court finds that such appointment would not be in the child's best interest "because the appointment would significantly impair the child's physical health or emotional development" or finds that there is a history of family violence involving the parents. TEX. FAM. CODE ANN. § 153.131(a) (West 2014). However, the term "parent" does not include a parent as to whom the parent-child relationship has been terminated. *Id.* § 101.024. Section 161.207 provides: "If the court terminates the parent-child relationship with respect to both parents or to the only living parent, the court shall appoint a suitable, competent adult, the Department of Protective and Regulatory Services, a licensed child-placing agency, or an authorized agency as a managing conservator of the child." *Id.* § 161.207(a) (West 2022).

In cases where a trial court's termination of the parent-child relationship is reversed, a parent is required to independently challenge a trial court's conservatorship finding under

Section 153.131(a) to obtain reversal of the conservatorship appointment. *See In re J.A.J.*, 243 S.W.3d at 616-17; *In re A.S.*, 261 S.W.3d 76, 92 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). In this case, however, we overruled K.G.'s challenge to the termination finding. We have reviewed the evidence supporting the court's termination findings and found the evidence to be legally and factually sufficient. Based upon the evidence recited above, we conclude the trial court did not abuse its discretion in appointing the Department as sole managing conservator of the children and not appointing K.G. as a possessory conservator. *See In re G.C.*, No. 01-12-00935-CV, 2013 WL 816440, at *10 (Tex. App.—Houston [1st Dist.] Mar. 5, 2013, pet. denied) (mem. op.) (finding no abuse of discretion in conservatorship finding where the evidence was sufficient to support termination of parental rights).

Nonetheless, K.G. argues that the trial court's failure to name her as a possessory conservator while allowing N.H. to maintain his parental rights shows the court's decision was arbitrary. K.G. specifically notes the evidence that N.H. was serving a twelve-year prison sentence for delivery of a controlled substance, the lack of evidence of a relationship between N.H. and M.M.H., and the evidence that M.M.H. and K.G. have a significant bond. We disagree that this evidence renders the court's decision not to name K.G. as a possessory conservator arbitrary. N.H. testified that he was in prison when the case began and was not offered any services by the Department. He was denied parole twice but hoped to make parole soon. N.H. was in agreement with M.M.H.'s placement with his older daughter. Upon his release, N.H. planned to comply with all the Department's requests. He understood that he must put forth a great amount of effort before he could have unsupervised access to M.M.H. Under these circumstances, we cannot conclude that the court's conservatorship findings were arbitrary. For the foregoing reasons, we overrule Appellant's second issue.

## DISPOSITION

Having overruled Appellant's first and second issues, we ***affirm*** the trial court's judgment.

GREG NEELEY
Justice

Opinion delivered April 20, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

7



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**APRIL 20, 2023**

**NO. 12-23-00002-CV**

**IN THE INTEREST OF T.S.S.C.,
M.M.H. AND M.K.W., CHILDREN**

Appeal from the County Court at Law No. 2
of Angelina County, Texas (Tr.Ct.No. CV-00453-20-08)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*