# NO. 12-24-00227-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF* | § | *APPEAL FROM THE 420TH* |
| *L.M.C., R.C. & R.W.C., JR.,* | § | *JUDICIAL DISTRICT COURT* |
| *CHILDREN* | § | *NACOGDOCHES COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

D.S. appeals the termination of her parental rights. In a single issue, she challenges the legal and factual sufficiency of the evidence that termination was in the children's best interest. We affirm.

## BACKGROUND

D.S. is the mother of L.M.C., R.C., and R.W.C. and R.C.1 is their father.[1] On January 10, 2023, the Department of Family and Protective Services (the Department) filed an original petition for protection of the children, for conservatorship, and for termination of D.S.'s parental rights. The trial court appointed the Department temporary managing conservator of the children and allowed D.S. limited access to and possession of the children. After a trial on the merits, the trial court found that the Department established, by clear and convincing evidence, that D.S. engaged in the acts or omissions necessary to support termination of her parental rights under Subsections (D) and (E) of Texas Family Code Section 161.001(b)(1) and termination of her

---

[1] R.C.1's parental rights were previously terminated, and he is not a party to this appeal.

parental rights is in the children's best interest. Based upon these findings, the trial court signed an order terminating D.S.'s parental rights. This appeal followed.

## TERMINATION OF PARENTAL RIGHTS

Involuntary termination of parental rights embodies fundamental constitutional rights. *Vela v. Marywood*, 17 S.W.3d 750, 759 (Tex. App.–Austin 2000), *pet. denied per curiam*, 53 S.W.3d 684 (Tex. 2001); *In re J.J.*, 911 S.W.2d 437, 439 (Tex. App.—Texarkana 1995, writ denied). Because a termination action "permanently sunders" the bonds between a parent and child, the proceedings must be strictly scrutinized. *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976); *In re Shaw*, 966 S.W.2d 174, 179 (Tex. App.—El Paso 1998, no pet.).

Section 161.001 of the Family Code permits a court to order termination of parental rights if two elements are established. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2024); *In re J.M.T.*, 39 S.W.3d 234, 237 (Tex. App.—Waco 1999, no pet.). First, the parent must have engaged in any one of the acts or omissions itemized in the second subsection of the statute. TEX. FAM. CODE ANN. § 161.001(b)(1); *Green v. Tex. Dep't of Protective & Regulatory Servs.*, 25 S.W.3d 213, 219 (Tex. App.—El Paso 2000, no pet.); *In re J.M.T.*, 39 S.W.3d at 237. Second, termination must be in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b)(2); *In re J.M.T.*, 39 S.W.3d at 237. Both elements must be established by clear and convincing evidence, and proof of one element does not alleviate the petitioner's burden of proving the other. TEX. FAM. CODE ANN. § 161.001; *Wiley*, 543 S.W.2d at 351; *In re J.M.T.*, 39 S.W.3d at 237.

The clear and convincing standard for termination of parental rights is both constitutionally and statutorily mandated. TEX. FAM. CODE ANN. § 161.001; *In re J.J.*, 911 S.W.2d at 439. Clear and convincing evidence means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2019). The burden of proof is upon the party seeking the deprivation of parental rights. *In re J.M.T.*, 39 S.W.3d at 240.

## STANDARD OF REVIEW

When confronted with both a legal and factual sufficiency challenge, an appellate court must first review the legal sufficiency of the evidence. *Glover v. Tex. Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex. 1981); *In re M.D.S.*, 1 S.W.3d 190, 197 (Tex. App.—Amarillo 1999, no

pet.). In conducting a legal sufficiency review, we must look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its findings were true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the fact finder settled disputed facts in favor of its finding if a reasonable fact finder could do so and disregard all evidence that a reasonable fact finder could have disbelieved or found incredible. *Id.*

The appropriate standard for reviewing a factual sufficiency challenge to the termination findings is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). In determining whether the fact finder has met this standard, an appellate court considers all the evidence in the record, both that in support of and contrary to the trial court's findings. *Id.* at 27-29. Further, an appellate court should consider whether disputed evidence is such that a reasonable fact finder could not have reconciled that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. The trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Nordstrom v. Nordstrom*, 965 S.W.2d 575, 580 (Tex. App.—Houston [1st Dist.] 1997, pet. denied).

## BEST INTERESTS OF THE CHILDREN

In D.S.'s sole issue, she argues the evidence is legally and factually insufficient to support a finding that termination of her parental rights is in the children's best interest.[2]

## Applicable Law

In determining the best interest of the child, a number of factors have been considered, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the

---

[2] We feel we must point out that D.S.'s fact-intensive first issue lacks record references completely and consists of only three sentences of argument. *See* TEX. R. APP. P. 38.1 ("Argument. The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record") (emphasis added). An appellant waives an issue on appeal if she does not adequately brief that issue by not providing supporting arguments, substantive analysis, and appropriate citations to authorities and to the record. *Interest of J.O.A.M.*, No. 01-23-00691-692-CV, 2024 WL 1169432, at *23 (Tex. App.—Houston [1st Dist.] Mar. 19, 2024) (mem. op.) ("An appellate issue that is not supported by argument or that contains an argument without citation to the record . . . presents nothing for review."); *Interest of A.H.*, No. 02-21-00402-CV, 2022 WL 1682422, at *5 (Tex. App—Fort Worth May 26, 2022) (mem. op.) (holding that mother inadequately briefed issue where she did not provide any record citations pertaining to the issue or explain how the issue she complained of caused the rendition of an improper judgment). However, because we are able to construe D.S.'s argument in this case, we will consider it in the interest of justice.

parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

The family code also provides a list of factors that we will consider in conjunction with the above-mentioned *Holley* factors. *See* TEX. FAM. CODE ANN. § 263.307(b) (West 2019). These include (1) the child's age and physical and mental vulnerabilities; (2) the magnitude, frequency, and circumstances of the harm to the child; (3) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (4) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (5) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (6) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (7) whether the child's family demonstrates adequate parenting skills; and (8) whether an adequate social support system consisting of an extended family and friends is available to the child. *See id.* § 263.307(b)(1), (3), (6), (8), (10), (11), (12), (13).

The evidence need not prove all statutory or *Holley* factors in order to show that termination of parental rights is in a child's best interest. *See Holley*, 544 S.W.2d at 372; *In re J.I.T.P.*, 99 S.W.3d 841, 848 (Tex. App.–Houston [14th Dist.] 2003, no pet.). In other words, the best interest of the child does not require proof of any unique set of factors nor limit proof to any specific factors. *In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.–Ft. Worth 2001, no pet.). Undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the child's best interest. *In re M.R.J.M.*, 280 S.W.3d 494, 507 (Tex. App.–Ft. Worth 2009, no pet.). But the presence of scant evidence relevant to each factor will not support such a finding. *Id.* Evidence supporting termination of parental rights is also probative in determining whether termination is in the best interest of the child. *See In re C.H.*, 89 S.W.3d at 28-29. We apply the statutory and *Holley* factors below.

4

**Analysis**

Macee Skillern, a Department caseworker, testified that the children were initially removed in 2020 when D.S. and R.C.1 went out of town and left the children, who were three, two, and one year old at the time, home alone. Skillern stated that R.C.1 had a drug problem and tested positive for methamphetamine during the case. The children were eventually placed back in the home on a monitored return. However, during a subsequent home visit, Skillern saw a "blunt" on the ground. During another visit, no one answered the door despite the parents' vehicle in the driveway and L.M.C. waving from the window. Skillern testified that R.C.1's parental rights were terminated at the end of 2020 after he admitted using marijuana while caring for the children. D.S. was named sole managing conservator. Skillern further testified that she explained to D.S. that R.C.1 was no longer considered the children's legal father and that his contact with the children must be supervised. According to Skillern, D.S. assured her that R.C.1 no longer lived with her and that she planned to divorce him.

Sarah Evans, a Department investigator, testified that the Department received an intake in November 2022 alleging that R.C. had a scratch above his eye and reported that R.C.1 punched him in the face. Evans further stated that she learned that D.S. and R.C.1 were living together and sharing a bedroom. When she asked R.C.1 about R.C.'s injury, R.C.1 reportedly claimed that they were walking in the woods when R.C. was "struck by a stick." D.S. was not present when R.C. was injured.

Evans further testified that the children participated in forensic interviews. In those interviews, R.C. reported that R.C.1 told him to lie about how he sustained his injury and L.M.C. made an outcry of sexual abuse by R.C.1. When Evans spoke with D.S. about L.M.C.'s outcry, D.S. responded that L.M.C. had been dreaming. According to Evans, D.S. did not believe L.M.C. and appeared disinterested in alleviating any trauma L.M.C. sustained. In addition, Evans stated that D.S. believed R.C.1 and did not believe her children and that D.S. claimed the children "were good at telling stories." Evans implemented a safety plan requiring that R.C.1 move out of the home and be supervised around the children. When Evans visited the home to ensure the plan was being followed, no one answered the door even though there was a car in the driveway and Evans heard an adult male inside the home. As a result, the Department sought removal of the children.

Evans testified that the children where alone with R.C.1 when she and law enforcement removed the children from the home. D.S. testified that she agreed to the safety plan because she wanted to keep the children safe. However, she admitted leaving the children alone in R.C.1's care. She claimed that the day of removal was the only time he had been unsupervised because her mother-in-law or "friends from work" typically supervised his visits. D.S. further admitted that her mother-in-law allows R.C.1 access to the children, yet D.S. still wished for the children to be placed in her mother-in-law's care.

D.S. admitted lying when she told the Department that she was no longer in a relationship with R.C.1 during the 2020 case. She also admitted to previously asking the Department's attorney how R.C.1 could regain his parental rights. D.S. acknowledged that R.C.1 was arrested for the physical and sexual abuse allegations in July 2023. But she maintained that the children lie to get attention. She also believed the allegations were "BS" and that R.C.1 would not abuse the children. D.S. admitted to having several phone calls with R.C.1 following his arrest and attempting to bond him out of jail. At trial, D.S. first denied remaining married to R.C.1 but then admitted that they are still married.

D.S. testified that she completed her service plan. However, Emmalee Tomaszewski, a Department caseworker, testified that the service plan is not a simple checklist. Instead, the parent must demonstrate that they adequately addressed the identified needs and made the necessary changes. Tomaszewski further testified that D.S. technically completed her services but failed to apply the knowledge she should have gained from them. For example, D.S. remained "very adamant" that the children fabricated the physical and sexual abuse allegations. And if the allegations were false, D.S. was not prepared to address the children's issues in making those outcries. Tomaszewski further testified that she conveyed to D.S. the need for behavioral change. She also stated that D.S. asked what she needed "to say on the stand to appear as if" she could be protective of the children. Tomaszewski confirmed that D.S. requested "very specific wording."

Tomaszewski further testified that D.S. did not regularly visit or maintain contact with the children. Tomaszewski arranged for supervised virtual visits because D.S. claimed she could not attend in-person visits due to her overnight work schedule. She further testified that she attempted to accommodate D.S.'s work schedule but that D.S. failed to take advantage of them and would not offer alternatives.

Dr. Benjamin Boynton testified that D.S. was "faking good, trying to present unrealistically virtuous" during her psychological examination. Therefore, he was unable to make any recommendations or diagnoses.

Tomaszewski testified the children were in a home in a Houston area when she assumed the case in September 2023. The children were then moved to another home and began counseling. Christina Kilgore, a Department caseworker, testified that the children had been in the Georgetown placement for approximately four months when she became involved in the case. According to Kilgore, the children had become "happier spirited." She further testified that the children's caregivers ensured the children attended and participated in counseling. In addition, while the children initially exhibited behavioral problems, those problems have diminished since their placement and participation in counseling. Kilgore testified that the children told her that they want to stay in their current placement.

"[T]he prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." TEX. FAM. CODE ANN. § 263.307(a) (West 2019). After viewing the evidence in the light most favorable to the trial court's best interest finding and applying the statutory and *Holley* factors, we conclude that a reasonable trier of fact could have formed a firm belief or conviction that termination of D.S.'s parental rights was in the best interest of the children. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re J.F.C.*, 96 S.W.3d at 266. Any contrary evidence is not so significant that a reasonable factfinder could not have reconciled it in favor of its finding and formed a firm belief or conviction that terminating D.S.'s parental rights is in the children's best interest. Because the evidence is legally and factually sufficient to support the trial court's best interest finding, we overrule D.S.'s sole issue.

## DISPOSITION

Having overruled D.S.'s sole issue, we *affirm* the trial court's judgment.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered November 20, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**NOVEMBER 20, 2024**

**NO. 12-24-00227-CV**

**IN THE INTEREST OF  L. M. C., R. C. & R. W. C., JR., CHILDREN**

Appeal from the 420th District Court
of Nacogdoches County, Texas (Tr.Ct.No. C2338248)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED, and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*