# NO. 12-23-00206-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF* | § | *APPEAL FROM THE* |
| *E. J. T., A CHILD* | § | *COUNTY COURT AT LAW NO. 2* |
| | § | *ANGELINA COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

K.B. and D.T. appeal the termination of their parental rights to their minor child, E.J.T. K.B.'s counsel filed a brief in compliance with ***Anders v. California***, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967) and ***Gainous v. State***, 436 S.W.2d 137 (Tex. Crim. App. 1969). D.T. filed a merits brief, in which he raises one issue challenging the legal and factual sufficiency of the evidence that termination of D.T.'s parental rights was in E.J.T.'s best interest. We affirm.

## BACKGROUND

K.B. is E.J.T.'s mother, and D.T. is her father. On December 28, 2021, the Department of Family and Protective Services filed an original petition for protection of E.J.T., for conservatorship, and for termination of the parental rights of K.B. and D.T. The trial court appointed the Department temporary managing conservator of E.J.T. and allowed K.B. and D.T. limited access to and possession of E.J.T. After a trial on the merits, the trial court found that the Department established, by clear and convincing evidence, that both K.B. and D.T. engaged in the acts or omissions necessary to support termination of their parental rights under Subsections (D), (E), and (O) of Texas Family Code Section 161.001(b)(1) and that termination of their parental

rights is in E.J.T.'s best interest. Based upon these findings, the trial court signed an order terminating the parental rights of K.B. and D.T. This appeal followed.

<u>**TERMINATION OF PARENTAL RIGHTS**</u>

Involuntary termination of parental rights involves fundamental constitutional rights. *Vela v. Marywood*, 17 S.W.3d 750, 759 (Tex. App.—Austin 2000), *pet. denied per curiam*, 53 S.W.3d 684 (Tex. 2001); *In re J.J.*, 911 S.W.2d 437, 439 (Tex. App.—Texarkana 1995, writ denied). Because a termination action permanently sunders the bonds between parent and child, the proceedings must be strictly scrutinized. *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976); *In re Shaw*, 966 S.W.2d 174, 179 (Tex. App.—El Paso 1998, no pet.). "[W]e must exercise the utmost care in reviewing the termination of parental rights to be certain that the child's interests are best served and that the parent's rights are acknowledged and protected." *Vela*, 17 S.W.3d at 759.

Section 161.001(b) of the Texas Family Code permits a court to order termination of parental rights if two elements are established. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2023). The movant must show that (1) the parent committed one or more predicate acts or omissions, and (2) termination is in the child's best interest. *See id*. § 161.001(b)(1), (2); *see also In re J.M.T.*, 39 S.W.3d 234, 237 (Tex. App.—Waco 1999, no pet.). Both elements must be established by clear and convincing evidence, and proof of one element does not alleviate the petitioner's burden of proving the other. TEX. FAM. CODE ANN. § 161.001(b)(1), (2); *Wiley*, 543 S.W.2d at 351; *In re J.M.T.*, 39 S.W.3d at 237.

The "clear and convincing" evidentiary standard for termination of parental rights is both constitutionally and statutorily mandated. TEX. FAM. CODE ANN. § 161.001; *In re J.J.*, 911 S.W.2d at 439. "Clear and convincing evidence" is defined as "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2019). The party seeking termination of parental rights bears the burden of proof. *In re J.M.T.*, 39 S.W.3d at 240.

<u>**THE EVIDENCE**</u>

Joshua Vidrine, an investigator with the Department, testified that the Department received an intake in October 2021, alleging that E.J.T. was bruised during an altercation between D.T. and K.B.. K.B. told Vidrine that she contacted the Department after a struggle occurred between her

and D.T. when she went to pick up E.J.T. Vidrine went to D.T.'s home and saw E.J.T., but he did not observe any bruises or other injuries. Vidrine agreed that there were "numerous incidents" of family violence in October, November, and December that led to the removal of E.J.T. in December 2021, including an accusation that D.T. attempted to break K.B.'s arm. Vidrine explained that even if a child is not harmed during incidents of family violence, such an atmosphere "still causes a threat to the child."

Shawna Dupree, another investigator with the Department, explained that the intake alleged that D.T. physically assaulted K.B. while she was holding the child, and K.B. confirmed that the incident occurred. Dupree stated that there were multiple reports of family violence from June to December 2021, including a report that D.T. and his mother attacked K.B. while she was trying to remove the baby. D.T. was taking medication to address mental health issues, and Dupree did not observe any "anger issues" or violence. D.T. made progress toward completing the items required by his service plan. Dupree testified that the Department's program director made the decision to remove E.J.T., but based upon what she observed, she did not believe removing E.J.T. was necessary.

Conservatorship worker Lashundra Vinson testified that she began working on the case after the trial court appointed the Department temporary managing conservator of E.J.T., and E.J.T. was placed in a foster home. D.T. visited the child, and both D.T. and K.B. interacted appropriately with E.J.T. during supervised visits. According to Vinson, K.B. failed to complete the required parenting class and did not obtain stable housing or employment, but D.T. "worked the majority of his services" with the exception of attending individual counseling and obtaining stable housing. Vinson testified that K.B. stayed in contact with the Department and visited E.J.T., but K.B. struggled to complete her services. Vinson explained that K.B. and D.T. did not have stable housing, did not complete their plans of service, and did not demonstrate the ability to keep E.J.T. safe.

According to Vinson, in November 2022, she scheduled a visit at a public location outside the Department's office, and she received repeated text messages from both parents because they wanted unsupervised visits despite the court's order requiring visits to be supervised. Vinson explained that she felt threatened by the text messages, so she moved the visit to the Department's office. During the supervised visit, D.T. used foul language, was belligerent, and accused Vinson of lying. The Department called the security office, and a security officer asked D.T. to leave the

building and contacted the police, who escorted D.T. off the premises and located a weapon in D.T.'s vehicle. According to Vinson, in December 2022, D.T. was jailed in Louisiana for a number of months for violence toward K.B.. Vinson explained that the trial court's second family plan required D.T. to complete a batterers intervention prevention program (BIPP) to address domestic violence and anger management concerns. D.T. did not complete the BIPP while Vinson was the caseworker.

Vinson was removed as the caseworker at the end of December 2022 after receiving "indirect threats" from D.T. Vinson explained that D.T. "stated a color [of a] vehicle that is [at] my home that he has never seen me drive. And . . . for him to know that car, he had to come by my house[,]" so D.T. knew where she and her children live. Vinson explained that she believes D.T. is violent and dangerous, and his parental rights should be terminated. According to Vinson, E.J.T. has "a very good bond" with her foster mother, and her foster mother can provide a suitable permanent placement for E.J.T. Vinson testified that D.T.'s parental rights should be terminated due to his hostile behavior, and that termination would be in E.J.T.'s best interest.

Conservatorship caseworker Ashley Young received the case on February 1, 2023. Young testified that K.B. completed fifty-seven percent of the tasks on her service plan, and she did not have stable housing until November 2022. K.B. also failed to provide verification of employment and a copy of her driver's license. According to Young, in December 2022, D.T. struck K.B. during an incident of domestic violence in Louisiana, and he was in jail for three months before he ultimately pleaded "guilty" to domestic battery assault and received probation.

Young testified that D.T. completed four out of seven tasks required by his service plan. One of the programs D.T. failed to complete was the BIPP. Young explained that domestic violence can harm children emotionally and psychologically, even if they are not physically victimized by it. According to Young, E.J.T. is placed in a foster home with a sibling, and the foster parent is interested in adoption. Young testified that if the trial court terminated the parental rights of K.B. and D.T., the Department would place E.J.T. with an aunt because the aunt's home study was approved, and "studies show that when children are with family, . . . they thrive." The Department would have E.J.T. begin visits with her aunt to make the transition slow for her. Young opined that K.B.'s parental rights should be terminated due to her failure to complete her service plan and her inability to support E.J.T., and D.T.'s parental rights should be terminated for

4

failure to complete his service plan and his history of domestic violence and aggression toward K.B., and terminating their parental rights would be in E.J.T.'s best interest.

D.T.'s adoptive mother, W.T., testified that D.T. was placed in her home via the foster care system when he was eight years old, so she has known him for sixteen years. W.T. explained that when D.T. came to her home, he was "heavily medicated" for anger, aggression, and depression associated with his removal from his birth mother. According to W.T., D.T. was violent, aggressive, and had an anger problem from age eight until age seventeen. Four police officers removed D.T. from W.T.'s home when he was seventeen years old because he locked W.T. in the bedroom and threatened to harm her because she would not allow him to go to church to see his girlfriend. W.T. testified that when things with Vinson did not go in D.T.'s favor, D.T. had angry outbursts toward Vinson and made racist remarks about her. W.T. opined that E.J.T. should not remain with D.T. because he does not "actively pursue the mental health help and medication that he needs, and he has not stabilized himself to be able to provide a home for her that [is] nurturing and that would keep her safe from harm." W.T. believes that D.T. blames her for E.J.T.'s removal and perceives her as a threat "to her being his[,]" and she testified, "our family could be in danger because he does not control his anger and his impulses and he will act out." W.T. also stated that she has seen K.B. "continue to put her children in harmful situations [while acting] in . . . survival mode." D.T.'s sister, N.D., testified that when she was growing up with D.T., he would "act out" and create "a very hostile environment" if he became angry, and she agreed that D.T. is aggressive. N.D. explained that she wants to provide a home for E.J.T.

K.B.'s adoptive mother, R.B., testified that D.T. "is not typically aggressive[,]" but he does become aggressive if he and K.B. have a disagreement. According to R.B., during one incident, D.T. grabbed K.B. out of the bathtub and spit on her while E.J.T. was in her arms. R.B. explained that K.B. was injured during the incident. When asked whether D.T.'s parental rights should be terminated, R.B. opined that E.J.T.'s "current placement is best for her right now."

CASA casework supervisor Lora Huerta testified that she worked on the case since E.J.T.'s removal in December 2021, after allegations of domestic violence between K.B. and D.T. Huerta opined that K.B.'s parental rights should be terminated because she has not demonstrated stable employment and cannot provide a safe and stable home for E.J.T., and that termination of K.B.'s parental rights is in E.J.T.'s best interest. According to Huerta, domestic violence is the biggest concern with D.T., and she explained that during his psychological appointment, a Child Abuse

Potential Inventory could not be obtained because D.T. refused to answer the questions and "was extremely defensive." Huerta opined that D.T.'s parental rights should be terminated because he failed to complete his service plan and he would not provide a safe environment for E.J.T.

D.T.'s biological mother, M.K., explained that she takes medication for bipolar disorder. M.K. testified that she lost custody of her children, including D.T., because she was a drug addict, and she has been convicted of assault and is currently charged with driving while intoxicated. M.K. testified that D.T. would never harm E.J.T., and she opined that his parental rights should not be terminated.

K.B. testified that during the pendency of the case, she underwent individual counseling and domestic violence counseling, and she has learned to keep E.J.T. safe and not to allow E.J.T. to be around anyone who would be violent. K.B. also took approximately thirty parenting classes, at which she learned to properly care for all of E.J.T.'s needs. K.B. explained that she occasionally cleans houses, but she is not currently employed because she recently gave birth to another child. K.B. admitted that she violated the trial court's order by allowing D.T. to see E.J.T. when she had unsupervised visits with the child. According to K.B., during the incident in Louisiana that led to D.T.'s conviction for domestic battery assault, she tapped D.T. on the shoulder and told him she wanted her things and E.J.T.'s things, and D.T. jumped up and grabbed his gun. K.B. agreed that she and D.T. have a fairly volatile relationship, but she opined that she can be a good mother to E.J.T., and her parental rights should not be terminated.

## BEST INTEREST OF THE CHILD

In his sole appellate issue, D.T. challenges the legal and factual sufficiency of the evidence supporting the trial court's finding that termination of his parental rights is in E.J.T.'s best interest.

### Standard of Review

When presented with a challenge to both the legal and factual sufficiency of the evidence, an appellate court must first review the legal sufficiency of the evidence. *Glover v. Tex. Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex. 1981); *In re M.D.S.*, 1 S.W.3d 190, 197 (Tex. App.—Amarillo 1999, no pet.). When reviewing the legal sufficiency of the evidence, we review "all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume that the factfinder resolved disputed facts in favor of its finding

6

if a reasonable factfinder could, and we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id*. If no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, the evidence is legally insufficient. *Id*. The trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Nordstrom v. Nordstrom*, 965 S.W.2d 575, 580 (Tex. App.—Houston [1st Dist.] 1997, pet. denied).

When reviewing the factual sufficiency of the evidence, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). We give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing, and we consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its ruling. *In re J.F.C.*, 96 S.W.3d at 266. If, considering the entire record, "the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*.

## Applicable Law

In determining the best interest of the child, we consider a non-exhaustive list of factors, including: (1) the desires of the child; (2) the child's emotional and physical needs now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) programs available to assist these individuals to promote the child's best interest; (6) plans for the child by these individuals or the agency seeking custody; (7) stability of the home or proposed placement; (8) acts or omissions of the parent which may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

The Texas Family Code also provides a list of factors that we will consider in conjunction with the *Holley* factors. TEX. FAM. CODE ANN. § 263.307(b) (West 2019). These statutory factors include (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the Department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's

parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child. *Id*.

No particular *Holley* factor is controlling, and evidence of one factor may be sufficient to support a finding that termination is in the child's best interest. *In re A.P.*, 184 S.W.3d 410, 414 (Tex. App.—Dallas 2006, no pet.). The evidence need not prove all the statutory or *Holley* factors to show that termination of parental rights is in a child's best interest. *See Holley*, 544 S.W.2d at 372; *In re J.I.T.P.*, 99 S.W.3d 841, 848 (Tex. App.—Houston [14th Dist.] 2003, no pet.). The best interest of the child does not require proof of any unique set of factors nor limit proof to any specific factors. *In re D.M.*, 58 S.W.3d 802, 814 (Tex. App.—Fort Worth 2001, no pet.). Although undisputed evidence of one factor may be sufficient to support a finding that termination is in the child's best interest, the presence of scant evidence relevant to each factor will not support such a finding. *In re M.R.J.M.*, 280 S.W.3d 494, 507 (Tex. App.—Fort Worth 2009, no pet.). Evidence supporting termination of parental rights is also probative in determining whether termination is in the child's best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). In conducting a best-interest analysis, "a court may consider not only direct evidence but also may consider circumstantial evidence, subjective factors, and the totality of the evidence." *In re J.M.T.*, 519 S.W.3d 258, 269 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). Evidence of failure to complete all of the tasks and services required by a service plan also supports a trial court's finding that termination is in the child's best interest. *Id*. at 269-70. We will apply the statutory and *Holley* factors below.

## Analysis

The evidence at trial showed that D.T. was violent toward K.B. on several occasions before E.J.T. was removed, and the relationship between D.T. and K.B. is volatile. In addition, during

the incident that led to the removal of E.J.T., D.T. was physically aggressive with K.B. while E.J.T. was in her arms. The evidence also demonstrated that D.T. has been aggressive and violent since childhood, and he struggles to control his anger. The evidence further showed that D.T. pleaded "guilty" to domestic battery assault against K.B. and was sentenced to six months of probation as a result. Moreover, the evidence showed that D.T. used foul language, was belligerent, and accused the caseworker of lying during a supervised visit with E.J.T., and after a security officer asked D.T. to leave the building and contacted the police, officers escorted D.T. off the premises and located a weapon in D.T.'s car. The evidence further demonstrated that E.J.T. is placed in a foster home with her sibling and has a "very good bond" with her foster mother. The Department approved E.J.T.'s aunt as a placement for E.J.T. following a home study, and her aunt testified that she desires to provide a home for E.J.T. The evidence showed that the Department planned to schedule visits for E.J.T. with her aunt to ease the transition from her foster mother to her aunt.

"[T]he prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." TEX. FAM. CODE ANN. § 263.307(a) (West 2019). Viewing all the evidence relating to the statutory and *Holley* factors in the light most favorable to the trial court's finding, we conclude that a reasonable factfinder could have formed a firm belief or conviction that termination of D.T.'s parental rights is in E.J.T.'s best interest, and therefore, the evidence of best interest is legally sufficient. *See* TEX. FAM. CODE ANN. §§ 161.001(b)(2), 263.307(b); *see also **In re J.F.C.**,* 96 S.W.3d at 266; ***Holley***, 544 S.W.2d at 371-72; ***In re J.M.T.***, 519 S.W.3d at 269-70. Although some evidence, such as testimony regarding D.T.'s stable employment and his efforts toward completing his service plan, as well as Dupree's testimony that she did not believe removing E.J.T. was necessary, might weigh against the trial court's finding, this evidence is not so significant that a reasonable factfinder could not have reconciled it in favor of its finding and formed a firm belief or conviction that terminating D.T.'s parental rights is in E.J.T.'s best interest. *See **In re J.F.C.***, 96 S.W.3d at 266; ***Holley***, 544 S.W.2d at 371-72; ***In re J.M.T.***, 519 S.W.3d at 269-70. We therefore conclude that the evidence supporting the trial court's finding that termination of D.T.'s parental rights is in E.J.T.'s best interest is factually sufficient. *See **In re J.F.C.***, 96 S.W.3d at 266; ***Holley***, 544 S.W.2d at 371-72; ***In re J.M.T.***, 519 S.W.3d at 269-70. Having concluded that legally and factually sufficient evidence supports the trial court's best interest finding, we overrule D.T.'s sole issue.

K.B.'s counsel filed a brief in compliance with *Anders*, stating that he diligently reviewed the appellate record and is of the opinion that the record reflects no reversible error and that there is no error upon which an appeal can be predicated. This Court has previously held that *Anders* procedures apply to cases in which the Department seeks termination of parental rights. *See In re K.S.M.*, 61 S.W.3d 632, 634 (Tex. App.—Tyler 2001, no pet.). In compliance with *Anders*, K.B.'s counsel's brief presents a professional evaluation of the record demonstrating why there are no reversible grounds on appeal and referencing any grounds that might arguably support the appeal. *See Anders*, 386 U.S. at 744, 87 S. Ct. at 1400; *Mays v. State*, 904 S.W.2d 920, 922-23 (Tex. App.—Fort Worth 1995, no pet.).

As a reviewing court, we must conduct an independent evaluation of the record to determine whether counsel is correct in concluding that the appeal is frivolous. *See Stafford v. State*, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991); *Mays*, 904 S.W.2d at 923. We carefully reviewed the appellate record and K.B.'s counsel's brief. We find nothing in the record that might arguably support K.B.'s appeal.[1] We therefore agree with K.B.'s counsel that her appeal is wholly frivolous.[2]

## DISPOSITION

Having overruled D.T.'s sole issue and having concluded that K.B.'s appeal is wholly frivolous, we ***affirm*** the trial court's judgment. *See* TEX. R. APP. P. 43.2(a).

**BRIAN HOYLE**
Justice

Opinion delivered December 20, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

---

[1] K.B.'s counsel certified that he provided K.B. with a copy of the brief, informed her that she had the right to file her own brief, and took concrete measures to facilitate her review of the record. *See Kelly v. State*, 436 S.W.3d 313, 319 (Tex. Crim. App. 2014); *In the Matter of C.F.*, No. 03-18-00008-CV, 2018 WL 2750007, at *1 (Tex. App.—Austin June 8, 2018, no pet.) (mem. op.). K.B. was given the time to file her own brief, but the time for filing such a brief has expired, and we have not received a pro se brief.

[2] K.B.'s counsel's obligations to K.B. have not yet been discharged. *See In re P.M.*, 520 S.W.3d 24, 27 (Tex. 2016) (holding that the right to counsel in suits seeking termination of parental rights extends to "all proceedings in [the Texas Supreme Court], including the filing of a petition for review."). If, after consulting with counsel, K.B. desires to file a petition for review, counsel should timely file with the Texas Supreme Court "a petition for review that satisfies the standards for an *Anders* brief." *Id.* at 27-28; *see A.C. v. Tex. Dep't of Family & Protective Servs.*, No. 03-16-00543-CV, 2016 WL 5874880, at *1 n.2 (Tex. App.—Austin Oct. 5, 2016, no pet.) (mem. op.).



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**DECEMBER 20, 2023**

**NO. 12-23-00206-CV**

**IN THE INTEREST OF E. J. T., A CHILD**

---

Appeal from the County Court at Law No 2

of Angelina County, Texas (Tr.Ct.No. CV-01512-21-12)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below be in all things **affirmed**, and that the decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*