# NO. 12-24-00113-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF* | *§* | *APPEAL FROM THE 411TH* |
| *J. C., M. C. AND K. J. C., CHILDREN* | *§* | *JUDICIAL DISTRICT COURT* |
| | *§* | *TRINITY COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

J.P.C. appeals the termination of his parental rights. In two issues, he argues the evidence is legally and factually insufficient to support the trial court's judgment. We affirm.

## BACKGROUND

J.P.C. is the father and A.A. is the mother of J.C., M.C., and K.J.C.[1] On October 3, 2022, the Department of Family and Protective Services (the Department) filed an original petition for protection of J.C., M.C., and K.J.C., for conservatorship, and for termination of J.P.C.'s and A.A.'s parental rights. The Department was named temporary managing conservator of the children. The parents were appointed possessory conservators with limited access to and possession of the children.

Following a bench trial, the trial court found, by clear and convincing evidence, that J.P.C. engaged in one or more of the acts or omissions necessary to support termination of his parental rights under subsections (D), (E), (N), and (O) of Texas Family Code Section 161.001(b)(1). The trial court also found that termination of the parent-child relationship between the children and J.P.C. is in the children's best interest. Based on these findings, the

---

[1] A.A. is not a party to this appeal.

trial court ordered that the parent-child relationship between J.P.C. and J.C., M.C., and K.J.C. be terminated.  This appeal followed.

## TERMINATION OF PARENTAL RIGHTS

Involuntary termination of parental rights embodies fundamental constitutional rights. *Vela v. Marywood*, 17 S.W.3d 750, 759 (Tex. App.–Austin 2000), *pet. denied per curiam*, 53 S.W.3d 684 (Tex. 2001); *In re J.J.*, 911 S.W.2d 437, 439 (Tex. App.—Texarkana 1995, writ denied).  Because a termination action "permanently sunders" the bonds between a parent and child, the proceedings must be strictly scrutinized.  *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976); *In re Shaw*, 966 S.W.2d 174, 179 (Tex. App.—El Paso 1998, no pet.).

Section 161.001 of the Family Code permits a court to order termination of parental rights if two elements are established.  TEX. FAM. CODE ANN. § 161.001 (West Supp. 2023); *In re J.M.T.*, 39 S.W.3d 234, 237 (Tex. App.—Waco 1999, no pet.).  First, the parent must have engaged in any one of the acts or omissions itemized in the second subsection of the statute. TEX. FAM. CODE ANN. § 161.001(b)(1); *Green v. Tex. Dep't of Protective & Regulatory Servs.*, 25 S.W.3d 213, 219 (Tex. App.—El Paso 2000, no pet.); *In re J.M.T.*, 39 S.W.3d at 237. Second, termination must be in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b)(2); *In re J.M.T.*, 39 S.W.3d at 237.  Both elements must be established by clear and convincing evidence, and proof of one element does not alleviate the petitioner's burden of proving the other.  TEX. FAM. CODE ANN. § 161.001; *Wiley*, 543 S.W.2d at 351; *In re J.M.T.*, 39 S.W.3d at 237.

The clear and convincing standard for termination of parental rights is both constitutionally and statutorily mandated.  TEX. FAM. CODE ANN. § 161.001; *In re J.J.*, 911 S.W.2d at 439. Clear and convincing evidence means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."  TEX. FAM. CODE ANN. § 101.007 (West 2019).  The burden of proof is upon the party seeking the deprivation of parental rights.  *In re J.M.T.*, 39 S.W.3d at 240.

## STANDARD OF REVIEW

When confronted with both a legal and factual sufficiency challenge, an appellate court must first review the legal sufficiency of the evidence.  *Glover v. Tex. Gen. Indem. Co.*, 619

S.W.2d 400, 401 (Tex. 1981); *In re M.D.S.*, 1 S.W.3d 190, 197 (Tex. App.—Amarillo 1999, no pet.). In conducting a legal sufficiency review, we must look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its findings were true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the fact finder settled disputed facts in favor of its finding if a reasonable fact finder could do so and disregard all evidence that a reasonable fact finder could have disbelieved or found incredible. *Id.*

The appropriate standard for reviewing a factual sufficiency challenge to the termination findings is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). In determining whether the fact finder has met this standard, an appellate court considers all the evidence in the record, both that in support of and contrary to the trial court's findings. *Id.* at 27-29. Further, an appellate court should consider whether disputed evidence is such that a reasonable fact finder could not have reconciled that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. The trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Nordstrom v. Nordstrom*, 965 S.W.2d 575, 580 (Tex. App.—Houston [1st Dist.] 1997, pet. denied).

## TERMINATION UNDER SECTION 161.001(B)(1)

In his first issue, J.P.C. contends the evidence is legally and factually insufficient to terminate his parental rights pursuant to subsections (D) and (E) of Texas Family Code Section 161.001(b)(1).[2]

### Applicable Law

The trial court may order termination of the parent-child relationship if it finds by clear and convincing evidence that the parent knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child. TEX. FAM. CODE ANN. § 161.001(b)(1)(D). Subsection (D) addresses the child's surroundings and environment. *In re N.R.*, 101 S.W.3d 771, 775–76 (Tex. App.–Texarkana

---

[2] J.P.C. also challenges the sufficiency of the findings regarding subsections (N) and (O) of Section 161.001(b)(1); however, we need not address those challenges if the evidence is sufficient to support subsections (D) and (E). *See* TEX. R. APP. P. 47.1; *In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019). Therefore, we address those subsections first.

2003, no pet.). The child's "environment" refers to the suitability of the child's living conditions, as well as the conduct of parents or others in the home. *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.–Houston [14th Dist.] 2014, pet. denied). The relevant time frame to determine whether there is clear and convincing evidence of endangerment is before the child was removed. *Ybarra v. Tex. Dep't of Human Servs.*, 869 S.W.2d 574, 577 (Tex. App.–Corpus Christi 1993, no pet.). Further, subsection (D) permits termination based on a single act or omission. *In re R.D.*, 955 S.W.2d 364, 367 (Tex. App.–San Antonio 1997, pet. denied). Inappropriate, abusive, or unlawful conduct by persons who live in the child's home or with whom the child is compelled to associate on a regular basis in his home is a part of the "conditions or surroundings" of the child's home under section 161.001(1)(D). *In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.— Fort Worth 2009, no pet.).

The trial court also may order termination of the parent-child relationship if it finds by clear and convincing evidence that the parent engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangers the physical or emotional well-being of the child. TEX. FAM. CODE ANN. § 161.001(b)(1)(E). "Endanger" means to expose to loss or injury or to jeopardize. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). It is not necessary that the conduct be directed at the child or that the child actually suffers injury. *Id*. Termination under subsection (E) must be based on more than a single act or omission. *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.–Fort Worth 2000, pet. denied). A voluntary, deliberate, and conscious "course of conduct" by the parent that endangers the child's physical and emotional wellbeing is required. *In re D.M.*, 58 S.W.3d 801, 812 (Tex. App.—Fort Worth 2001, no pet.); *In re D.T.*, 34 S.W.3d at 634. Because the evidence pertaining to subsections (D) and (E) is interrelated, we conduct a consolidated review. *See In re T.N.S.*, 230 S.W.3d 434, 439 (Tex. App.—San Antonio 2007, no pet.).

Generally, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of the child. *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.– Fort Worth 2004, pet. denied). Though imprisonment of a parent is insufficient, standing alone, to constitute "engaging in conduct which endangers the emotional or physical well-being of the child," it is a factor to consider on the issue of endangerment. *See Boyd*, 727 S.W.2d at 533–35. A parent's criminal history—taking into account the nature of the crimes, the duration of

4

incarceration, and whether a pattern of escalating, repeated convictions exists—can support a finding of endangerment. ***Interest of J.F.-G.***, 627 S.W.3d 304, 313 (Tex. 2021).

**Analysis**

The evidence at trial showed that the Department removed the children after both J.P.C. and A.A. were arrested for murder and tampering with evidence. Ivy Goodnight, a Department investigator, testified that when A.A. and J.P.C. were arrested, the children had no caregiver and were too young to care for themselves. At the time of removal, K.J.C. was five years old, M.C. was eleven, and J.C. was fourteen. A.A. called a friend from church, Gisele Ivy, to take the children; however, Michelle Allison, a Department conservatorship worker, testified that Gisele could not take custody at that time because she was not a parent. Goodnight explained that the Department was authorized to take possession of and remove children who are without supervision. The children were subsequently placed with Gisele.

Gisele testified that, during phone calls from prison, J.P.C. discussed the details of his crimes with J.C. On October 3, 2022, J.P.C. was on the phone with all three children and Gisele when J.P.C. asked J.C. if he wanted to know what happened. Gisele walked away with the phone so that the other children did not hear the details. During that call, J.P.C. admitted involvement in the crimes for which he was charged. He told J.C. that he was asked to kill Karen, J.P.C.'s mother. At first, J.P.C. was "on board with it, and kidnapped her, took her to the home with the intent on killing her and then couldn't bring himself to do it." So A.A. and Clay, Karen's husband and J.P.C.'s stepfather, killed her. J.P.C. then said that Clay came over and got into an argument with J.P.C. in which both individuals pulled firearms and J.P.C. shot Clay. Then "they disposed of their bodies on a firepit in the yard." Gisele testified that J.C. was shocked, confused, and overwhelmed after hearing the details from his father. Allison opined that J.P.C.'s discussing his criminal charges with the children constitutes a form of emotional abuse and was inappropriate. Gary Miller, a representative from Court Appointed Special Advocates (CASA), also testified that this discussion could emotionally harm a child.

Allison testified that all the children were educationally behind at the time of removal. J.C. struggled with reading and math. M.C. had the greatest deficit, and K.J.C. was not as behind as the other two. She opined that the children were behind due to being homeschooled. At the time of removal, M.C. was eleven but could not spell her own name and struggled with reading comprehension and letter recognition. K.C. was five and did not know how to write her

5

own name. Gisele confirmed that M.C. was in fifth grade but read at a first-grade level. However, Allison testified that the children are now enrolled in public school and are doing "very, very well" in school since being placed with Gisele.

Allison also testified that the children's medical needs were not adequately met while living with their parents. When Gisele took the children to the dentist, K.J.C. had sixteen cavities, J.C. had seven, and M.C. had three. M.C. also went to Houston for "significant dental work." The children's dental needs have since been addressed.

Abusive or violent conduct by a resident of a child's home may produce an environment that endangers the physical or emotional well-being of a child. *In re D.C.*, 128 S.W.3d 707, 715 (Tex. App.—Fort Worth 2004, no pet.). Moreover, the failure to provide or obtain appropriate medical care for a child can constitute endangering conduct. *See D.H. v. Texas Dep't of Fam. & Protective Servs.*, 652 S.W.3d 54, 60 (Tex. App.—Austin 2021, no pet.). Thus, in making its determination, the trial court could have considered J.P.C.'s admission to his involvement in the murders, as well as the children's lack of dental and educational care while living with J.P.C. *See In re K.S.O.B.*, No. 01-18-00860-CV, 2019 WL 1246348, at *19 (Tex. App.—Houston [1st Dist.] Mar. 19, 2019, no pet.) (mem. op.) (noting that a child's basic needs include routine medical and dental care); *T.D. v. Tex. Dep't of Fam. & Protective Servs.*, 683 S.W.3d 901, 914-15 (Tex. App.—Austin 2024, no pet) (failing to have children educated can be endangering conduct). After reviewing the evidence in the light most favorable to the judgment, we hold that a reasonable factfinder could have formed a firm belief or conviction that J.C.P. knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being and engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E). Furthermore, having considered the entirety of the evidence, both that which supports and that which is contrary to the trial court's findings, we conclude that any disputed evidence is such that a reasonable fact finder could reconcile such disputed evidence in favor of its findings. *See In re J.F.C.*, 96 S.W.3d at 266. Therefore, we hold that the evidence is legally and factually sufficient to support termination of J.P.C.'s parental rights under subsections (D) and (E) of Texas Family Code Section 161.001(b)(1). Accordingly, we overrule J.P.C.'s first issue.

6

**BEST INTERESTS OF THE CHILDREN**

In J.P.C.'s second issue, he argues the evidence is legally and factually insufficient to support a finding that termination of his parental rights is in the children's best interest.

## Applicable Law

In determining the best interest of the child, a number of factors have been considered, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

The family code also provides a list of factors that we will consider in conjunction with the above-mentioned *Holley* factors. *See* TEX. FAM. CODE ANN. § 263.307(b) (West 2019). These include (1) the child's age and physical and mental vulnerabilities; (2) the magnitude, frequency, and circumstances of the harm to the child; (3) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (4) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (5) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (6) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (7) whether the child's family demonstrates adequate parenting skills; and (8) whether an adequate social support system consisting of an extended family and friends is available to the child. *See id.* § 263.307(b)(1), (3), (6), (8), (10), (11), (12), (13).

The evidence need not prove all statutory or *Holley* factors in order to show that termination of parental rights is in a child's best interest. *See Holley*, 544 S.W.2d at 372; *In re J.I.T.P.*, 99 S.W.3d 841, 848 (Tex. App.–Houston [14th Dist.] 2003, no pet.). In other words, the best interest of the child does not require proof of any unique set of factors nor limit proof to any specific factors. *In re D.M.*, 58 S.W.3d at 814. Undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the child's best interest.

***In re M.R.J.M.***, 280 S.W.3d at 507. But the presence of scant evidence relevant to each factor will not support such a finding. ***Id***. Evidence supporting termination of parental rights is also probative in determining whether termination is in the best interest of the child. *See **In re C.H.**,* 89 S.W.3d at 28-29. We apply the statutory and ***Holley*** factors below.

## Analysis

The evidence at trial showed that the children were removed because of J.P.C.'s arrest for murder and tampering with evidence. He remained incarcerated throughout the proceedings and confessed to his involvement in the crimes to J.C. and Gisele.

Allison testified that J.C. and M.C. underwent psychological assessments in January 2023. J.C. was diagnosed with adjustment disorder, mixed anxiety, and depressed mood. At the time of the assessment, he was having difficulty sleeping. Allison further testified that J.C. received counseling as a result. M.C. was diagnosed with provisional schizophrenia spectrum and adjustment disorder. M.C. claimed she was "seeing people" since age nine, but no such incidents have been disclosed since the evaluation.

Gisele testified that because the children had no school records, they were placed in grade levels according to their respective ages. J.C. was placed in ninth grade; however, because he struggled to complete his schoolwork, the school implemented a credit recovery program to assist him. M.C. was placed in fifth grade but also struggled. Gisele testified that M.C. struggles with reading and math. Gisele stated that she practices with M.C. daily to help her catch up and M.C. improved. K.J.C. was placed in kindergarten. Gisele testified that K.C. enjoys learning and is flourishing.

As previously mentioned, the children had significant dental needs upon removal. M.C. needed significant dental work. All three children had several cavities.

The children remained with Gisele since the initial removal. Allison characterized Gisele's and her husband's parenting as doing "a very good job" and working well with the children. According to Allison, the children are bonded and attached to Gisele and her husband. Allison further testified that the children "expressed reservations" about being returned to J.P.C. even if he were acquitted or released on bond. Miller confirmed that the children wish to remain with Gisele and her husband, and the children expressed a desire to be adopted.

Miller testified that he spoke with J.C. about his life before removal. J.C. told him that he was M.C.'s and K.C.'s primary caregiver. Therefore, Miller opined that the children did not have

normalcy while living with J.P.C. He believed the children could have that normalcy with Gisele. Gisele testified that she and her husband wanted to give the children a "forever home" and adopt them.

Allison testified that the children need a nurturing home, supportive family, and counseling. She confirmed that Gisele and her husband committed to providing for the children's physical and emotional needs. She further testified that J.P.C. is not able to provide those at this time, as he is incarcerated and did not have a trial date at the time. According to Allison, it would not be in the children's best interest to linger in foster care while awaiting the outcome of J.P.C.'s criminal trial.

"[T]he prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." TEX. FAM. CODE ANN. § 263.307(a) (West 2019). After viewing the evidence in the light most favorable to the trial court's best interest finding and applying the statutory and *Holley* factors, we conclude that a reasonable trier of fact could have formed a firm belief or conviction that termination of J.P.C.'s parental rights was in the best interest of the children. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re J.F.C.*, 96 S.W.3d at 266. Any contrary evidence is not so significant that a reasonable factfinder could not have reconciled it in favor of its finding and formed a firm belief or conviction that terminating J.P.C.'s parental rights is in the children's best interest. Because the evidence is legally and factually sufficient to support the trial court's best interest finding, we overrule J.P.C.'s second issue.

## DISPOSITION

Having overruled J.P.C.'s first and second issues, we *affirm* the trial court's judgment.

**BRIAN HOYLE**
Justice

Opinion delivered July 31, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

9



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JULY 31, 2024**

**NO. 12-24-00113-CV**

**IN THE INTEREST OF J. C., M. C. AND K. J. C., CHILDREN,**
Appellant

Appeal from the 411th District Court
of Trinity County, Texas (Tr.Ct.No. 24,098)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED, and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*